The State, *ex. rel.,* v. Cozad.

No. 24,672.

THE STATE OF KANSAS, ex rel. DONALD W. STEWART, County At-
torney of Montgomery County, *Appellee,* v. ROY COZAD, *Appel-
lant.*

SYLLABUS BY THE COURT.

1. NUISANCE—*Storage of Kerosene and Gasoline Not a Nuisance per se.* The
storage of kerosene and gasoline is not a public nuisance *per se.* Whether
or not it becomes a nuisance depends upon the location, or the manner in
which such storage is installed and conducted.

2. SAME. The facts examined, and *held,* not sufficient to support a judgment
enjoining as a public nuisance the erection of tanks for the storage of kero-
sene and gasoline.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge.
Opinion filed March 10, 1923. Reversed.

*Sullivan Lomax,* of Cherryvale, for the appellant.

*Charles B. Griffith,* attorney-general, *B. W. Berg,* county attorney, and
*W. B. Grant,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to enjoin defendant from erecting
tanks for the storage of gasoline and kerosene on a certain lot in
the city of Cherryvale upon the theory that the same would be
a public nuisance. The plaintiff prevailed, and the defendant ap-
peals, claiming there was error in the court below, particularly in
rendering judgment for plaintiff.

Through Cherryvale the railroad runs north and south. Just
west of the right of way is Depot street, fifty feet wide, and west
of that is block 20, which is 300 by 310 feet, with a twenty-foot
alley running through the center north and south. The east half
of the block is divided into six lots. The south lot is vacant; the
second one is vacant except for the railroad water tank; the third
had a wooden fuel oil tank near the south line and twenty-four
feet from the alley, and on this lot, north of the wooden oil tank
and twenty-four feet from the alley, are the foundation walls for
defendant's tanks. The lot is otherwise vacant. The fourth lot
belongs to the city and has a frame storage building on the north-
east corner. The fifth has an ironclad building, used as a shop for
the sale of oil, greases, etc., on the northeast corner, and on the
sixth lot are two frame residences. On the west half of the block

are one brick and five frame residences facing west. Along the alley are several outbuildings of various kinds. From the proposed location of the tanks the nearest dwelling is eighty-four feet, others in the block are 110 to 160. The ground east is vacant to the railroad tracks, and across the tracks and about 700 feet, are the oil and gasoline storage tanks of the Standard Oil Company situated about the same as to buildings as the proposed location of defendant. South there is no building for 500 feet. North about 800 feet is the main business street of the city. Plaintiff also showed that the erection of the tanks would increase the insurance rate of buildings within 100 feet. If 90 to 100 feet, 10 per cent; if closer the rate would vary and might be as much as 50 per cent increase, there being no increase for buildings more than 100 feet away. A witness who had been chief of the fire department at Independence for several years testified that gasoline and kerosene are highly inflammable and explosive; that the fumes explode when confined, and that the fumes have been known to travel 400 feet and ignite, and gave it as his judgment that the tanks would constitute a fire hazard and a nuisance. A witness residing on the west side of the block testified that the construction and erection of the tanks would decrease somewhat the value of his property and lessen the enjoyment and use thereof, and a witness residing in the northeast part of the block said it would disturb her peace somewhat and that she would rather it would not be there. "It does not make me feel any safer." A witness testified that the railroad company has a rule not to permit gasoline tanks on their right of way nearer than 100 feet from stock yards, 150 feet from a freight depot, or 600 feet from a passenger depot. The tanks proposed to be constructed were to be two in number, one with a capacity of 12,000 gallons, and the other 16,000, and used for kerosene and gasoline respectively. They were to be made of sheet steel, set on reinforced concrete pins or walls, fourteen inches thick, ten to twelve feet long and eight to ten feet high, properly painted, and with vents, and filled by underground pipes leading to the railroad switch track, the gas and oil to be pumped into the tanks by an electric motor. The entire construction being by standard approved methods. A building permit had been procured from the city for their erection, and the location was outside the fire limits of the city.

Is the evidence, of which the above is a synopsis, sufficient to

sustain a judgment that the erection of the tanks would be a public nuisance? Similar questions have been before the courts quite frequently. It is well settled that courts may take judicial notice of the inflammable and explosive qualities of gasoline and kerosene; that their storage, even in large quantities, does not constitute a nuisance *per se,* and that whether or not they constitute a nuisance depends upon the location of the tanks with reference to other buildings, or the manner in which the tanks are constructed and operated. (29 Cyc. 1177; *Great Northern Refining Company v. Lutes et al.,* 190 Ky. 451, 227 S. W. 795; *Thomas v. Jacobs,* 254 Pa. St. 255; *Hendrickson v. Standard Oil Co.,* 126 Md. 577, 585; *Helms v. Oil Co.,* 102 Kan. 164, 169 Pac. 208.)

In this case we may eliminate from our consideration the question of improper operation, for the tanks have not been constructed and the court cannot assume, for the purpose of granting an injunction, that they will be improperly operated. No complaint is made as to the plan or manner of erecting the tanks and the pipes leading thereto, and the evidence appears to show that such construction was in accordance with approved methods, so that question is eliminated.

We are left with the question of whether or not the place of the location, the proximity to other buildings, is such that the erection of the tanks at this particular place would be held to be a nuisance. The evidence relating to insurance has no force. Only one residence would have the insurance increased, and that only 10 per cent, which is not shown to be any greater increase than the erection of any other building at this place would cause. The fact that one resident of the block thought it would decrease the value of his property and lessen the enjoyable use thereof, and another would "rather the tanks wouldn't be there" are too inconsequential to be of force. (*Harper v. Standard Oil Co.,* 78 Mo. App. 338.) This is not an exclusive residential section of the city. It is outside of the fire limits; the erection of the tanks is not in violation of any ordinance. We have examined all the authorities cited in support of the injunction and many others. We regard the evidence entirely inadequate to support the judgment.

In *Julian v. Oil Co.,* 112 Kan. 671, decided by this court last month, being a suit by plaintiff owning residence property in a part of a city largely devoted to business purposes, to enjoin defendant from putting in large underground storage tanks for gasoline and kero-

sene for a filling station within a few feet of a residence, on the ground of nuisance, and in which the trial court denied the relief sought, it was held:

"The maintenance of a filling station in the location described herein cannot be regarded as a nuisance *per se* or a wrongful use of private property which a court may enjoin." (Syl. ¶ 3.)

The judgment of the court below will be reversed with directions to enter judgment for defendant.