33 P.(2d) 910

**PHILLIPS v. ALLINGHAM et al.**

No. 3891.

Supreme Court of New Mexico.

June 5, 1934.

Hunker & Noble, of East Las Vegas, for appellant.

J. R. Modrall, of Las Vegas, and Charles W. G. Ward, of East Las Vegas, for appellees.

SADLER, Justice.

The appellant was defendant below, the appellees plaintiffs. The alignment of the parties at the trial will be observed in referring to them here. The defendant appeals from the judgment of the district court of San Miguel county permanently enjoining him from having, maintaining, or operating in connection with his filling station located at the northeast corner of the intersection of Twelfth street and National avenue on the old Midway Garage property in the city of Las Vegas, N. M., two above-ground gasoline storage tanks each having a capacity of 12,000 gallons.

The case is presented to us in a peculiar, if not to say anomalous, manner. The plaintiffs filed their amended complaint seeking the relief ultimately awarded, to which amended complaint the defendant demurred. The demurrer was overruled, and defendant granted a stated time within which to answer or further plead. He did file an answer and the plaintiffs a reply thereto. This we gather from the recitals in the judgment, for the answer and reply are not incorporated in the transcript before us. Thereafter a trial was had upon the conclusion of which the court made its findings of fact and rendered judgment based thereon permanently enjoining the defendant as stated above. The defendant's exceptions to said findings, as well as to the court's refusal of certain findings and conclusions requested by him and to the decree itself, are incorporated in the judgment. Likewise there is contained in the judgment an order granting defendant an appeal therefrom to this court and fixing the amount of supersedeas upon such appeal.

In his amended præcipe for record on appeal, which brings up only portions of the record proper, and nothing by way of a bill of exceptions showing what evidence was introduced and considered at the trial, the defendant sets out the questions he desires to have reviewed as follows: "That the question which defendant desires to have reviewed by the Supreme Court of the State of New Mexico upon this appeal is whether the District Court erred in its judgment ordering an injunction to issue restraining the defendant from storing gasoline in above-ground tanks as a nuisance and whether the amended complaint filed in said cause stated facts suffi-

cient to constitute a cause of action and whether said District Court erred in overruling the demurrer to said amended complaint."

 Notwithstanding the well-established rule that a party by answering waives his demurrer, the defendant here relies upon these two points for reversal, to wit: (1) That the complaint fails to set forth facts sufficient to constitute a cause of action thereby depriving the court of jurisdiction to render judgment on such a complaint (then setting forth the respects in which it is claimed the complaint falls short of stating a cause of action); and (2) that the trial court erred in overruling defendant's demurrer to said complaint.

We recognize, of course, a certain limitation on the well-established rule above adverted to in that the failure of a complaint to state a cause of action is jurisdictional and, although the basis of demurrer not stood upon below, might still be renewed in this court. Nevertheless, when so raised here we must consider the point in the light of another rule applicable in testing the sufficiency of a complaint after trial, viz. the doctrine of aider by verdict or findings.

Oddly, the plaintiffs seek no advantage from the anomalous manner in which the question at issue is presented to us. They seem willing enough to have the basic question raised determined as if actually defendant had stood upon his demurrer below and suffered judgment to be entered against him. They have even stipulated with defendant in this court as to the existence of certain facts

from which we take it that the amended complaint is to be deemed further amended by the inclusion of these facts which were before the trial court at the time it passed upon defendant's demurrer.

Faced with such a situation, we can only consider defendant's arguments as a challenge to the sufficiency of the facts found or admitted to support the judgment rendered. Any other view of the matter would be unfair to the trial court in denying to its judgment the benefit of whatever aid may result to the complaint by reason of the findings adduced from the evidence. We accordingly address ourselves to a study of the facts found or undisputed to ascertain if they support the judgment rendered.

Three of the plaintiffs were found to be owners of property within a radius of 100 feet of the location of the storage tanks of defendant. One of them owned a garage 85 feet distant across Twelfth street. The other two owned residence properties in which they reside with their families, the one within about 50 feet and the other within 97 feet of the storage tanks. Located just across National avenue from defendant's property with defendant's filling station between it and the tanks is Continental Service Station. Across Twelfth street and 112 feet northwest from the tanks is located a blacksmith shop.

The tanks are located outside the fire zone prescribed by the ordinances of the city of Las Vegas, not in any exclusive residential section of the city, and on property used and denominated as industrial property. The area in the vicinity of the tanks appears de-

voted chiefly to industrial and commercial pursuits with a few residences still surviving the encroachment of industry.

Certain findings embraced in the judgment in the language of the court are as follows:

"That gasoline and other petroleum products so stored and to be stored in the said tanks are highly inflammable and explosive and are dangerous to life and property. That said storage tanks do not furnish adequate protection against fire and explosion and that such tanks are subject to breakage and injury from external sources, thus resulting in the escape of the highly inflammable and explosive contents thereof.

"That there are numerous wooden buildings and other buildings constructed partly of wood and partly of other materials near the said storage tanks, and that in the event of fire in this vicinity exposing the said tanks to heat, the said tanks may explode with great violence and injury to the lives and property of these plaintiffs and other people residing and owning property in this vicinity.

"That the said storage tanks and their erection and maintenance in their present location is a great danger, menace and hazard to the lives and property of the said plaintiffs as adjoining property owners and residents.

"That the said gasoline storage tanks will result in an increase in the fire insurance rates on certain property of these plaintiffs and on certain other property in this vicinity, and will also result in a decrease in the value of the property adjoining the said gasoline storage tanks.

"That the plaintiffs, P. S. Allingham, Minnie E. Clay and Gregorio Alirez, and other residents in this vicinity close to the said storage tanks, have an actual and reasonable fear of the said storage tanks as a danger to their property and to their lives. * * *

"That the defendant, W. W. Phillips has erected two steel storage tanks in the rear of the filling station located at the corner of National Avenue and 12th Street in the City of Las Vegas, New Mexico. That one of said tanks is used for the storage of gasoline and the other for the storage of fuel oil.

"That said tanks are constructed of 10-gauge steel sides with ⅜ inch ends, said tanks being entirely of welded construction and are set on steel piers 7 feet high, said piers being fastened to concrete piers set in the ground.

"That said tanks are each of approximately 12,000 gallons capacity.

"That said storage tanks are filled by pumping the contents thereof through underground pipes from tank cars on the Hot Springs Branch of the A. T. & S. F. Ry. directly to said tanks and that in filling said tanks none of the contents is handled in the open.

"That gasoline is drawn from said storage tanks through automatic pumps located in the front end of said filling station and is not handled in the open near said storage tanks.

"That said storage tanks are installed on property used and denominated as industrial property.

"That the said storage tanks are not located in any exclusive residential section of the city.

"That the defendant has expended in the improvement of said property and the erection of said storage tanks and pipe line leading thereto, the sum of $———.

"That said tanks are constructed of material similar to that of the average of such tanks sold throughout Las Vegas and its vicinity."

No ordinance of the city of Las Vegas denies to defendant the right to make the use proposed of his property. On the contrary, he had the written consent of the city to install and operate a gasoline filling station on the site in question and to use the street and alley for the purpose of piping oil and gas from tank cars on the Santa Fé track nearby to his filling station. There is an ordinance of the city prohibiting the storing or keeping for purposes of sale within the corporate limits of the city oil in larger quantities than five barrels, and gasoline in larger quantities than ten gallons, except by consent of the city council.

While the written consent attached to the amended complaint does not in express terms authorize defendant to keep in storage more than ten gallons of gasoline, the permission granted to conduct a filling station ex vi termini carries the privilege of keeping on hand more than the prohibited quantity of gasoline for purposes of sale. The fact that it was to be piped from the railroad siding surely contemplates quantity transfers.

What, then, are the rights of the parties under the foregoing facts? They must be determined in the light of controlling principles declared and followed in adjudicated cases.

"It is well settled that a court of equity may enjoin a threatened or anticipated nuisance, public or private, where it clearly appears that a nuisance will necessarily result from the contemplated act or thing which it is sought to enjoin." Author, case note at 7 A. L. R. 749, citing multitudinous authorities. See, to same effect, Hazlett v. Marland Refining Co. (C. C. A. 8) 30 F.(2d) 808.

"The general rule appears to be that stated in Flood v. Consumers Co. (1903) 105 Ill. App. 559, that ordinarily an injunction will be granted where the act or thing threatened is a nuisance per se, or necessarily will become a nuisance." 7 A. L. R. 763. For subsequent case notes supplementing 7 A. L. R. 749, 772, see 26 A. L. R. 937, 948, 32 A. L. R. 724, and 55 A. L. R. 880, 888.

It seems well established that gasoline in storage in built-up sections of a town or city is not per se a nuisance. 46 C. J. 709, § 188, under "Nuisances," Pennsylvania Co. v. Sun Co., 290 Pa. 404, 138 A. 909, 910, 55 A. L. R. 877, and State v. Cozad, 113 Kan. 200, 213 P. 654. The contemplated use not being a nuisance per se, do the facts found, or admitted, make it manifest that such use will necessarily become a nuisance, or render it highly probable that it will be such? The question has been answered by other courts in the light of analogous facts.

In Pennsylvania Co. v. Sun Co., supra, injunction against the construction of gasoline storage tanks was sought by an adjoining property owner. The cause was decided below upon a demurrer. Among other things the court said:

"One thing is quite certain, equity will not interfere, unless its right to do so is free from doubt. Sparhawk v. Union Pass. R. Co., 54 Pa. 401, 426. The wrong or injury resulting from the pursuit of a trade or business must be plainly manifest or certain to follow. Rhodes v. Dunbar, supra [57 Pa.] page 290 [98 Am. Dec. 221]; Wier's Appeal, 74 Pa. 230. If the injury be doubtful, eventual, or contingent, equity will not grant relief. Rhodes v. Dunbar, supra. The fact that it might possibly work injury is not sufficient. * * *

"The two tanks here were not built when this bill was presented; therefore, of course, they were not in operation. In considering the question in this case, we must determine from the disclosed uses to which the property is to be put in the place described, not only whether it possesses the power to do harm, but whether injury will necessarily result from the proposed use, or whether the use subjects the property to such contact with outside agencies that its probable result will be dangerous. Was the contact manifest or certain to follow?

"The bill does not charge any such inherent characteristic or any such likelihood of danger. True, it does say that petroleum and its by-products are highly explosive, readily ignited, and susceptible to ignition from lightning, spark, flame, intense heat of the sun, or internal combustion. It does not charge that the natural, the probable, result of the building with its contents will be an explosion or a fire. It does not charge that this would be a 'plainly manifest' result from placing oil or its by-product in the tank. It does charge that, because it is readily ignited, and because it is susceptible to ignition, the result of the use of the building under the circumstances would be a constant menace and danger. All of this is purely problematic or conjectural. Of course, petroleum and its by-products, under the circumstances here existing, are readily ignited; but will they be ignited? Is that likely? Does common experience show it? Is the manner of use as described such that the probabilities are that they will be? The words 'readily' and 'susceptible' are words of anticipation, apprehension, or mere fear, or, as the authorities say, doubtful, eventual, or contingent. The statement that the use becomes a menace is but a conclusion based on these antecedent conjectures.

"There is no allegation in the bill that the construction is improper, that the equipment is not of the ordinary and usual kind, or that the regulation of the plant and its supervision is not of the best; nor does the bill aver that there will be a failure to afford proper appliances in its conduct. The business is very generally carried on, and the same complaints as contained in this bill could be made against almost any business. Take, for illustration, gas containers or tanks, storage tanks for automobile use, automobiles, dynamite used in the conduct of business, paper

companies using large quantities of paper, or hay in a field or barn—all are readily ignited and susceptible to flame, sparks, lightning and combustion. To stamp them as nuisances per se without showing, not merely apprehension or anticipation, but that the reasonable and normal result of the use will be a fire and consequent destruction, would greatly widen the heretofore existing scope of equity jurisdiction, and greatly hamper necessary business through groundless fears.

"What we have said may be summarized briefly in this way: Where it is sought to enjoin an anticipated nuisance, it must ·be shown (a) that the proposed construction or the use to be made of property will be a nuisance per se; (b) or that, while it may not amount to a nuisance per se, under the circumstances of the case a nuisance must necessarily result from the contemplated act or thing. See 7 A. L. R. 749; 26 A. L. R. 937. The injury must be actually threatened, not merely anticipated; it· must be practically certain, not merely probable. It must further be shown that the threatened injury will be an irreparable one which cannot be compensated by damages in an action at law. A mere decrease in the value of complainant's property is not alone sufficient. Rhodes v. Dunbar, 57 Pa. 274, 98 Am. Dec. 221."

In City of Electra v. Cross (Tex. Civ. App.) 225 S. W. 795, 796, a case in which it was sought to enjoin the erection and maintenance of a gasoline filling station at which it was charged that from time to time there would be stored under ground adjacent to said filling station hundreds and thousands of gallons of gasoline which, "if the same should become ignited and should explode, would necessarily wrought (work) great havoc with persons and property," etc., the court among other things said: "To say the least, gasoline is used as a motive power almost as extensively as is steam. Unless properly insulated from flames, it will explode. But while in a general sense it may be termed an explosive and therefore dangerous, it does not follow that its storage in tanks of a filling station is necessarily so dangerous as to authorize the issuance of a writ of injunction to restrain such storage as is alleged in plaintiff's petition. It is a fact known· to every one that it can be and is used with safety to propel motorcars and other kinds of machinery all over the land, notwithstanding the fact that while being so used it is kept in close proximity to sparks of fire which explode small quantities of the gasoline as it is fed from the receptacle in which the supply is contained. It is kept with safety in storage at filling stations in almost every town in the country. The danger from explosion while so used or stored is practically eliminated by proper insulation and other preventive methods. Unless it be alleged and proved that such steps will not be taken to avoid the dangers of an explosion, no sufficient showing is made of such dangers from explosion as will authorize the issuance of the equitable writ of injunction to restrain the defendants from supplying a public need by erecting and maintaining the filling station proposed. Strieber v. Ward [Tex. Civ. App.] 196 S. W. 720, and authorities there cited."

Other authorities supporting the doctrine

enunciated in the cases just quoted from are State v. Cozad, 113 Kan. 200, 213 P. 654; Ferriman v. Turner, 99 Okl. 277, 227 P. 443, 446; Julian v. Golden Rule Oil Co., 112 Kan. 671, 212 P. 884; Adams v. Gorrell, 28 Ohio App. 55, 161 N. E. 786, affirmed 119 Ohio St. 139, 162 N. E. 397; Greene v. Spinning (Mo. App.) 48 S.W.(2d) 51; Borough of Manorville v. Flenner, 286 Pa. 103, 133 A. 30.

The two cases most relied upon by the plaintiffs, Whittemore v. Baxter Laundry Company, 181 Mich. 564, 148 N. W. 437, 52 L. R. A. (N. S.) 930, Ann. Cas. 1916C, 818 and Zeppenfeld v. Franklin Motor Service Co., 77 Ind. App. 687, 134 N. E. 487, easily distinguish themselves on their facts. In the Whittemore Case, with the exception of defendant's plant, the location was "strictly a residence district." The defendant proposed to locate the tanks "in the northwest corner of its premises, which was the farthest possible point on its premises from its own buildings and immediately adjoining the property of the complainant Whittemore, the nearest tank being about 11 feet from his house." Its assigned reason for not locating the tanks at another point on its property, that to do so would destroy its lawn and shrubbery on which it had taken a prize, evoked the following observation from the court, to wit: "If defendant was desirous of installing tanks to more economically conduct its business, it would seem to have been more reasonable to have disturbed and damaged its own lawn and shrubbery, however beautiful, rather than to disturb its neighbor in the enjoyment of his home and to damage his property."

The Zeppenfeld Case, supra, which was disposed of upon demurrer, dealt with a complaint which charged numerous and specific violations of the regulations of the Indiana state fire marshal's department in the installation of the tanks proposed to be used, as well as other conditions portending danger not here shown to be present.

The details of the handling of gasoline into the tanks here involved and thence through automatic pumps to the customer in the filling station, never being handled in the open near said storage tanks, all as found by the court, suggest the employment by defendant of approved methods in the operation of his business. The construction of the tanks, as set out by the court in its findings, seems to represent standard workmanship and material. Aside from the details thereof as disclosed by the findings, this is further reflected by the finding that they "are constructed of material similar to that of the average of such tanks sold throughout Las Vegas and its vicinity." What the findings thus disclose with particularity as to materials and construction overcomes an earlier general finding, in the language of the complaint, "that said storage tanks do not furnish adequate protection against fire and explosion," etc.

The fact that the plaintiffs entertain apprehension over the presence of said storage tanks does not entitle them to equitable relief except as the facts may reasonably warrant such apprehension. Even then it is the danger itself, not an entertained fear of it, which furnishes the true basis for injunction.

"In the case at bar there is no proof that plaintiff will be hurt, inconvenienced, annoyed, or damaged by reason of the maintenance and operation of said tank. There is, however, proof of a fear on his part that said tank when filled or partly filled, will endanger his family, increase the fire insurance on his house, and render his life unsafe and uncomfortable. Courts, either of law or of equity, however, will not give cognizance to the apprehended fears of mankind in reference to what may arise out of the conduct of a purely lawful enterprise. Culver v. Ragen, 15 Ohio Cir. Ct. R. 228, 8 O. C. D. 125; State ex rel. Woolery v. Brenner, 6 Ohio App. 209, 211; Cook v. City of Fall River, 239 Mass. 90, 131 N. E. 346, 18 A. L. R. 119." Adams v. Gorrell, 28 Ohio App. 55, 161 N. E. 786, 787, affirmed 119 Ohio St. 139, 162 N. E. 397.

Nor does the mere circumstance that the presence of said tanks will result in an increase in insurance rates on adjoining or nearby properties, or that they will suffer some depreciation in value therefrom, warrant the relief sought, so long as these results are consequent upon a lawful use by defendant of his own property. This is affirmed in several of the cases cited supra. In one of them, Ferriman v. Turner, the Supreme Court of Oklahoma said: "Appellant cites the case of Shamburger v. Scheurrer et al. (Tex. Civ. App.) 198 S. W. 1069, wherein the court held, in substance, that the fact that nuisance complained of might be such as would depreciate the value of adjoining property and increase the rate of insurance was not sufficient ground to justify the granting of an injunction. This seems to be the rule followed by the great weight of authorities."

We realize the difficulties to be apprehended if a court seeks for its guidance a "hard and fast" rule in cases of this kind. The general principles controlling may be broadly stated, as has been done, but whether a given case falls within or without an application of those principles must and can only be determined from "the location, the quantity, and other surrounding circumstances." 46 C. J. 710.

Feeling convinced, as we do, that, under the facts here found, the apprehended dangers relied upon to constitute the thing challenged a nuisance are "doubtful, eventual, or contingent," rather than necessary results, or even likely within the degree of probability required, we think the court erred in awarding a permanent injunction against the defendant.

Its judgment will therefore be reversed, and the cause remanded for further proceedings conformably to the views herein expressed. It is so ordered.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.