643 P.2d 274

Arnulfo and Concha GONZALEZ, et al., Plaintiffs-Appellees,

v.

B. F. WHITAKER, Defendant-Appellant,

and

The Board of County Commissioners of Dona Ana County.

No. 5404.

Court of Appeals of New Mexico.

March 9, 1982.

711

Stephen A. Hubert, Beverly J. Single-
man, Martin, Lutz, Cresswell & Hubert, P.
A., Las Cruces, for defendant-appellant
Whitaker.

Jose Angel Silva, Jr., Rallis & Silva, El
Paso, Tex., for plaintiffs-appellees.

## OPINION

WALTERS, Chief Judge.

Defendant B. F. Whitaker (Whitaker)
obtained a special use permit from the
Dona Ana Board of County Commissioners
(Board) to build a dairy near the communi-
ty of Chamberino in Dona Ana County,
New Mexico. Plaintiffs Arnulfo and Con-
cha Gonzalez and other residents of Cham-
berino (residents), opposing its construction,
appealed the Board's decision and the Board
denied their appeal. They then brought
suit against the Board and Whitaker to
enjoin the Board from issuing the special
use permit, and to enjoin Whitaker from
constructing the dairy, alleging a public[1]
nuisance or, in the alternative, for damages
resulting from the creation of a private
nuisance.[2] Both defendants moved to dis-
miss for failure to state a claim, which the
court treated as motions for summary judg-
ment. Summary judgment was granted to
the Board, and that judgment has not been
appealed. Whitaker's motion was denied.
We granted his application for interlocutory
appeal.

Whitaker presents two basic arguments:
(1) the New Mexico Environmental Im-
provement Agency (EIA), not the district
court, has primary jurisdiction over the resi-
dents' complaint; and (2) since the com-
plaint is premature, the district court erred

1. The complaint alleges that the dairy will be a
public nuisance. Section 30-8-1, N.M.S.A.
1978 states that a public nuisance consists of
"knowingly creating, performing or maintain-
ing anything affecting any number of citizens
without lawful authority which is either:
 A. injurious to public health, safety, morals
or welfare; or
 B. interferes with the exercise and enjoy-
ment of public rights...."
Some of the consequences plaintiffs alleged
will occur are private in nature, i.e., creation of

obnoxious odors, and the aesthetic unaccepta-
bility of a dairy. Plaintiffs seem to allege both
public and private nuisance.

2. Plaintiffs ask damages for detriment to exist-
ing land values and uses (damages for private
nuisance) and damages for the detrimental ef-
fect the dairy will have upon the community
resources, health, safety and welfare (damages
for a public nuisance).

712

in denying Whitaker's motion for summary judgment.

### 1. *Primary jurisdiction.*

■ The question of primary jurisdiction was addressed in *State ex rel. Norvell v. Arizona Pub. Serv. Co.*, 85 N.M. 165, 510 P.2d 98 (1973). The Supreme Court there said, quoting from *United States v. Western Pac. R. R. Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956):

> The doctrine of primary jurisdiction ... is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.... 'Primary jurisdiction' ... applies where the claim is originally cognizable in the courts, and comes into play whenever enforcement of a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

85 N.M. 170, 510 P.2d 103.

Invocation of the doctrine depends on whether the issues presented are factual issues which are within the peculiar expertise of an administrative agency. *O'Hare v. Valley Utilities, Inc.*, 89 N.M. 105, 547 P.2d 1147 (Ct.App.1976).

Plaintiffs' complaint alleges that a nuisance will result from ground water pollution and depletion, objectionable odor, solid waste disposal problems, inadequate design, increased traffic, deterioration of property values and offenses to the aesthetics of the area. Whitaker cites the Environmental Improvement Act, § 74–1–1, et seq., N.M. S.A. 1978, which specifically empowers the EIA to maintain, develop and enforce regulations and standards in areas of water supply and water pollution, liquid and solid waste disposal, air quality management, noise control and vector control.

Whitaker argues that the EIA "was given an all-encompassing power to abate nuisance," citing § 74–1–7 A, *supra*. It is his position that since the type of environmental problems cited by plaintiffs as causing a public nuisance are those specific types of environmental concerns over which the EIA has regulatory and enforcement power, the EIA should be given jurisdiction to resolve those factual issues which are within its peculiar expertise.

The residents also rely on *State ex rel. Norvell, supra*, contending that the doctrine of primary jurisdiction does not deprive the courts of subject matter jurisdiction to hear public nuisance cases. They perceive the issue to be whether the district court should have exercised restraint and deferred to the forum with greater expertise in a particular field. Residents argue that the district court was correct in not deferring to the EIA, especially since the EIA would have no expertise over the damage award, which Whitaker concedes. *See O'Hare, supra.*

■ As stated in *O'Hare*, primary jurisdiction is essentially a doctrine of comity between the courts and administrative agencies. The invocation of the doctrine depends on whether the questions presented are "exclusively factual issues within the peculiar expertise of the commission" or "if statutory interpretation or issues of law are significant." *Id.* The EIA does have certain enforcement powers with respect to some of the nuisances claimed by residents; it does not have the "all-encompassing power to abate nuisance," however. Section 74–1–6E gives EIA the power to "enforce the rules, regulations and orders promulgated by the board and ... laws for which the agency is responsible *by appropriate action in courts of competent jurisdiction.*"

The Environmental Improvement *Board* (EIB) may promulgate regulations and standards in the following areas:

(1) food protection;

(2) water supply;

(3) liquid waste; solid waste sanitation and refuse disposal;

(4) air quality management as provided in the Air Quality Control Act [74–2–1 to 74–2–17 NMSA 1978];

(5) radiation control as provided in the Radiation Protection Act [74–3–1 to 74–

1–11 NMSA 1978] and radioactive material disposal as provided in the Radioactive Material Disposal Act;

(6) noise control;

(7) nuisance abatement;

(8) vector control;

(9) occupational health and safety as provided in the Occupational Health and Safety Act [50–9–1 to 50–9–25 NMSA 1978];

(10) sanitation of public swimming pools and public baths; and

(11) plumbing, drainage, ventilation and sanitation of public buildings in the interest of public health.

Section 74–1–8 A, N.M.S.A.1978.

■ Section 74–1–7 A imposes on EIA the responsibility to "maintain, develop and enforce regulations and standards" in the same areas. Neither the EIB nor the EIA is given the power to abate nuisances; the EIB is obliged to promulgate regulations and standards to prevent the creation or to abate the existence of nuisances, but the EIA must enforce the regulations of its Board through the courts. There is a distinction between having the *duty* to develop and to enforce standards and regulations, and having the *power* to effect abatement without resort to the judicial system. The statutes covering the duties and authority of the EIA do not provide for resolution by EIA of damage claims by private citizens.

■ Based on the test for primary jurisdiction enunciated in *Norvell* and in *O'Hare, supra,* and the language of the Environmental Improvement Act, the pivotal question is whether the issues raised by the complaint are within the peculiar expertise of the EIA or if the issues of law are significant and should properly be decided by the court.

Whitaker points to no specific regulations that would help to establish that a dairy is or will be a public nuisance. The record indicates that the applicable rules and regulations of the EIA were complied with. In the minutes of the public hearing of the Board of Appeals of the Dona Ana Board of County Commissioners we find:

He [Mr. Huber, attorney for Whitaker] stated Mr. Whitaker has been attending hearings and has complied with all the rules and regulations of the Environmental Improvement Division and the Soil Conservation Service. He has received the approval of those agencies, as well and the County Planning Commission.

The minutes show also that representatives of the Environmental Improvement Division and the Soil Conservation Service appeared at the meeting of the county commission in support of Whitaker's application. It would appear, therefore, that the Environmental Improvement Agency has already exercised whatever "primary jurisdiction" it held—it gave its approval to the construction of the dairy. The question which still remains is: Will the dairy be a nuisance to the surrounding landowners even if applicable EIA regulations have been met, which would justify issuance of an injunction? That decision must be made in the courts, as contemplated by § 74–1–6 E, *supra,* and New Mexico case law on the tort of nuisance. *See First Natl. Bank v. Nor-Am Agr. Prod.,* 88 N.M. 74, 537 P.2d 682 (Ct.App.1975); *Aguayo v. Village of Chama,* 79 N.M. 729, 449 P.2d 331 (1969).

Contrary to Whitaker's insistence that this case is no different from *Norvell, supra,* where plaintiffs asked that certain equipment be installed, the mechanical makeup of a power plant be modified, certain fuel be required to be used, and monitoring and reporting procedures be followed, the instant case asks for prohibition of creation of a "nuisance." Whitaker does not request, as *Norvell* did, regulation of an enterprise; it asks that an approval of EIA already granted be overturned or, alternatively, that damages be allowed if construction of the dairy is permitted to proceed. The posture of this case is already beyond the regulatory stages of EIA, and it readily falls within the traditional jurisdiction of the court to enjoin, abate, or impose damages for creation of a nuisance, *O'Hare v. Valley Utilities, Inc., supra,* if one be created.

The trial court did not err in retaining jurisdiction.

2. Does the common law remedy for nuisance survive the enactment of the Environmental Improvement Act?

Citing no authority, Whitaker argues that, unlike other jurisdictions, there is no provision in the New Mexico law which creates the EIA that preserves common law remedies. We assume he contends that since common law remedies regarding abatement of a public nuisance are not specifically mentioned or preserved in §§ 74–1–1, et seq., N.M.S.A.1978, these remedies are no longer available.

The statute establishing the EIB and the EIA is silent regarding common law remedies. It does enpower the EIA to determine and enforce regulations regarding public nuisances. It is the prevailing view, however, that the decision of an agency charged with those responsibilities is not conclusive or beyond determination by the courts. *Hart v. City of Dallas*, 565 S.W.2d 373 (Tex.Civ.App.1978); *Houston v. Lurie*, 148 Tex. 391, 224 S.W.2d 871, 14 A.L.R.2d 61 (1949).

When the question of repeal or abrogation was discussed in *Norvell, supra*, the Supreme Court expressly declined to pass upon whether the nuisance statutes had been repealed by implications, and noted that several jurisdictions deciding this question have rejected the argument "that the administrative remedies abrogate long-standing judicial remedies ... absent a clear legislative intent to the contrary." (85 N.M. at 169, 510 P.2d 98.)

Repeal by implication is not favored and will not be resorted to unless necessary to give effect to an obvious legislative intent. *Saiz v. City of Albuquerque*, 82 N.M. 746, 487 P.2d 174 (Ct.App.1971). It is not logical to expect, under guise of primary jurisdiction or repeal of traditional remedies, that an agency which has approved the construction of the dairy, with which this case is concerned, will apply to the district court on behalf of these plaintiffs to ask that its own decision be enjoined. Undoubtedly this is the sort of situation envisioned by Justice Stephenson in *Norvell,*

*supra*, when he observed that "[f]act situations may arise in which the nuisance statutes ought to remain available." (85 N.M. at 170, 510 P.2d 98.) *Mahone v. Autry*, 55 N.M. 111, 227 P.2d 623 (1951), is a case which illustrates New Mexico's recognition of the common law tort of and remedy for nuisance, and we take guidance from *Norvell, supra*, in acknowledging that some fact situations require the continued availability of the common law regarding nuisance.

The common law is only abrogated or repealed by statute when the statute directly and irreconcilably is opposed to the common law. *Valdez v. State*, 83 N.M. 720, 497 P.2d 231 (1972). The EIB and EIA statutes are silent regarding common law remedies; we cannot say that they are directly and irreconcilably opposed to long-standing common law remedies.

3. Was plaintiff's suit premature?

Defendant Whitaker claims that an injunction suit can only be maintained prior to an alleged nuisance coming into being when the proposed establishment is a nuisance per se, citing three cases from foreign jurisdictions. We need not rely on decisions outside New Mexico. In *Phillips v. Allingham*, 38 N.M. 361, 33 P.2d 910 (1934), the Supreme Court discussed issuance of an anticipatory injunction, and adopted the general rule that ordinarily an injunction will be granted where the act or thing threatened is a nuisance per se, or necessarily will become a nuisance. It decided that gasoline in storage was not a nuisance per se, and that the apprehended dangers relied upon to constitute a nuisance were doubtful, eventual or contingent, rather than a necessary result or highly probable. There the issuance of an injunction was reversed.

However, in *Koeber v. Apex-Albuq Phoenix Express*, 72 N.M. 4, 380 P.2d 14, (1963), the Supreme Court affirmed the trial court's issuance of an injunction restraining the construction of a truck terminal. Although holding that a truck terminal was not a nuisance per se, it declared that the trial court's findings regarding the con-

struction, operation and maintenance of the terminal "made it manifest" that it would necessarily become a nuisance, or make it highly probable that it would become one. It held: "Under such a situation, it becomes a nuisance in fact." (72 N.M. at 6, 380 P.2d 14.)

 *Phillips v. Allingham, supra,* establish the propriety of requesting an anticipatory injunction before a nuisance is created, and the correctness of its issuance if the necessary proofs are made. Plaintiff's suit is not premature.

The trial court correctly denied defendant Whitaker's motion. The judgment is AFFIRMED.

NEAL, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

In the trial court, Whitaker was denied summary judgment based upon a motion to dismiss. The majority opinion affirmed. In my opinion, plaintiffs' complaint did not state a claim for relief and was prematurely filed.

On May 20, 1981, plaintiffs filed a complaint against defendants. It alleged that Dona Ana Planning Commission granted Whitaker a special use permit for the Whitaker Dairy. Plaintiffs appealed to the county commission. On February 18, 1981, by a 2 to 1 vote, the county commissioners denied the appeal. Under plaintiffs' Cause of Action, they asserted twelve reasons why the district court should enjoin the county commission from issuing the proposed special use permit because it would constitute a public nuisance, "and why the court should grant from the defendants damages." Under the prayer for relief, plaintiffs requested that the county commission be enjoined from issuing a special use permit, "in the alternative, that defendant, B. F. Whitaker, be enjoined from building a dairy in the area thereby creating a public nuisance which will cause irreparable injury to the community," and in the alternative,

the court award damages to plaintiffs "but in no event should be less than" $6,000,000.00.

"Our cases have rather consistently held that the prayer is either not part of the complaint or not part of the statement of the cause of action." *Heth v. Armijo,* 83 N.M. 498, 501, 494 P.2d 160 (1972).

Plaintiffs' complaint did not seek an injunction against Whitaker. It only sought damages if it could prove that the dairy was a public nuisance.

Whitaker filed a motion to dismiss plaintiffs' complaint with prejudice on three grounds: (1) the process issued was void ab initio; (2) plaintiffs failed to meet a statutory filing deadline and the court lacked jurisdiction; and (3) plaintiffs failed to state a claim upon which relief can be granted. Whitaker filed no affidavits. Neither did plaintiffs.

The county commission also filed a motion to dismiss on five grounds, together with an affidavit of the county clerk which included as exhibits, documents in the clerk's office.

Arguments were had and the trial court entered its Order. An application for an interlocutory appeal can be presented to this Court, if the trial court believes that his *Order* involves a controlling *question of law* as to which there is substantial ground for difference of opinion, and so states in his *Order.* When an interlocutory appeal is granted, we must carefully scrutinize the *Order* entered and its application to the proceedings below. Regardless of points raised and briefs filed, we should not side-step the Order. To reach a fair and equitable result, our duty is to analyze the Order and determine what questions of law are involved over which there is ground for difference of opinion. The court found:

1) That because affidavits have been filed ... the Motion to Dismiss by ... County Commissioners is now a Motion for Summary judgment ....

2) That, as to the claims against ... County Commissioners ... an appeal from the granting of a special use permit

to ... Whitaker was heard on February 18, 1981 and a decision denying the appeal was entered on said date.

3) That Plaintiffs filed this Complaint on May 20, 1981.

4) *That Plaintiff failed to file a petition in District Court within thirty days as required by Sections 3–21–8 and 3–21–9, NMSA 1978.*

5) *That the ... County Commissioners' issuance of a special use permit to ... Whitaker has become final.*

6) That it has been stipulated by all parties that ... Whitaker is not yet operating a dairy, nor has he begun the construction of a dairy.

7) *That ... Whitaker's Motion for Summary judgment should be denied.* [All emphasis added.]

The court ordered that the county commissioners' summary judgment was well taken and "FURTHER ORDERED that ... *Whitaker's Motion for Summary Judgment is denied.* That this Order denying ... *Whitaker's Motion to Dismiss involves a controlling question of law....*" [Emphasis added.]

These facts have been finally established:

(1) Whitaker has a special use permit to build a dairy.

(2) The trial court did not enjoin Whitaker from building the dairy.

(3) Whitaker cannot be enjoined from building the dairy.

(4) Whitaker has full authority to build a dairy. It is not, therefore, a public nuisance.

(5) Absent any plans, specifications and its operation, it is impossible to determine whether the dairy will be a private nuisance. Guess or speculation cannot be substituted for the facts.

(6) If plaintiffs have a claim for relief for damages against Whitaker based upon a private nuisance, plaintiffs must wait until the dairy is built and operated.

Logic and reason does not require the citation of authority. The majority opinion relies on *Phillips v. Allingham,* 38 N.M. 361,

33 P.2d 910 (1934) and *Koeber v. Apex-Albuq Phoenix Express,* 72 N.M. 4, 380 P.2d 14 (1963).

In *Phillips,* the trial court permanently enjoined Phillips from having, maintaining or operating two above-ground gasoline storage tanks, in connection with his filling station, because the tanks were a nuisance. The judgment was reversed. In the course of its opinion, the court quoted authority to the effect that an injunction will be granted where the act or thing threatened is a nuisance per se, or necessarily will become a nuisance.

*Koeber* followed *Phillips* but affirmed an injunction issued by the trial court.

In the instant case, no injunction was issued by the trial court.

Plaintiffs claim that the construction and operation of a dairy is a public nuisance. Section 30–8–1, N.M.S.A.1978 reads in pertinent part:

A public nuisance consists of knowingly creating, performing or maintaining anything affecting any number of citizens *without lawful authority* .... [Emphasis added.]

With a special use permit granted by the county commissioners, Whitaker has lawful authority to proceed. Therefore, the construction and operation of a dairy is not a public nuisance. If a nuisance at all, it would have to be found to be a private nuisance. *Jellison v. Gleason,* 77 N.M. 445, 423 P.2d 876 (1967). Plaintiffs' complaint can not now state a claim upon which relief can be granted.

The trial court found "that ... Whitaker's motion for summary judgment be denied." It ordered "that ... Whitaker's Motion for Summary Judgment is denied." The trial court made no finding as to how Whitaker's motion to dismiss plaintiffs' complaint became a motion for summary judgment. Whitaker did not file a motion for summary judgment nor any affidavits in support of his motion to dismiss plaintiffs' complaint. Furthermore the "finding" was not a finding of fact. No fact or reason is stated to show why the "summary

judgment" should be denied. The "finding" is a conclusion of law without any support in the findings to support a judgment that the "summary judgment" should be denied. The trial court erred in holding that defendant's "Motion for Summary Judgment" is denied.

Plaintiffs did not appeal from the Order of the court. That portion of the Order pertaining to the action of the county commission should be affirmed. That portion of the Order that denied Whitaker's motion for summary judgment should be reversed and remanded to the trial court to determine whether Whitaker's motion to dismiss should be granted or denied.