301 P.2d 322

**TOM FIELDS, Ltd., Plaintiff in Error
(Intervenor below),**

v.

**R. M. TIGNER, Defendant in Error
(Plaintiff below),**

and

**Owl Drug Company, Inc., and Maurice A.
Smith and Eleanor B. Smith, Defendants
in Error (Defendants below).**

**No. 6083.**

Supreme Court of New Mexico.

Sept. 6, 1956.

Carpenter, Eaton & Phelps, Roswell, for Tom Fields, Ltd., plaintiff in error.

Atwood & Malone, Roswell, for R. M. Tigner, defendant in error.

SADLER, Justice.

We are called upon in this proceeding on writ of error to determine whether an abuse of discretion appears in the action of the trial court in denying the petition of the plaintiff in error to intervene in a suit to foreclose a chattel mortgage on a stock of merchandise in the custody of a receiver appointed by the court incident to foreclosure.

The suit out of which the order before us for review arises was filed June 1, 1951, in the district court of Chaves County by the plaintiff against the defendants Owl Drug Company, a New Mexico Corporation, and Maurice A. Smith and Eleanor B. Smith to recover the unpaid principal of $50,800 said to be due on a note originally made for

$70,000 by the defendants Owl Drug Company and Maurice A. Smith, to the plaintiff. The note in its original amount represented the amount agreed to be paid by Smith as the purchase price of the capital stock of Owl Drug Company, then owned by plaintiff. As security for the purchase price of the capital stock represented by the promissory note in the amount above indicated the defendants, Owl Drug Company and Maurice A. Smith, gave plaintiff, R. M. Tigner, former owner of the capital stock of Owl Drug Company, a chattel mortgage bearing same date as the note, December 3, 1951. It covered all the stock of goods, furniture, equipment and other personal property owned by defendants, Owl Drug Company and Maurice A. Smith and used by them in the operation of the drug business in Roswell, New Mexico.

The complaint as filed consisted of three counts, the first asking recovery on the note above mentioned, and the second and third being for recovery on separate unsecured notes held by plaintiff and executed by Owl Drug Company. The day following filing of suit, June 2, 1951, the plaintiff secured an order to show cause why a receiver should not be appointed of all the property of Owl Drug Company, including the stock of merchandise and fixtures covered by the chattel mortgage so executed as aforesaid. Following hearing on the order to show cause, the court appointed a receiver who duly qualified by giving the bond required by his order of appointment. He took immediate custody and possession of all the chattels of Owl Drug Company that were subject to the mortgage and embraced the stock of merchandise and fixtures covered by the chattel mortgage, with power as well to preserve the assets of Owl Drug Company, pendente lite. In order the better to accomplish the last mentioned end, the receiver was also given power to conduct the business of Owl Drug Company during the period of foreclosure.

On July 5, 1955, a certificate of default was entered against Owl Drug Company. On the same date, to wit, July 5, 1955, the defendant Maurice A. Smith filed his answer and counterclaim alleging fraud on part of plaintiff, Tigner, seeking rescission and damages of $2,750. The defendant, Mrs. Maurice A. Smith, through a motion filed on the same day, sought dismissal of the suit as against her on the ground no cause of action had been asserted against her. Default judgment was taken against defendant Owl Drug Company, on August 24, 1955.

There were several attempts to intervene filed by parties after motion for default was filed, all claiming to be unsecured creditors of Owl Drug Company, three of whom it is here claimed by plaintiff in error are interested in a consolidated appeal prosecuted before this Court, seeking a review of an order denying their efforts to intervene in the foreclosure suit. It is said all of them challenge the validity of plaintiff's

mortgage and claim as well that certain assets of No. 2 Owl Drug Company established at Walker Air Base, near Roswell, to which portions of the stock from Owl Drug Company in Roswell were removed, are not covered by the plaintiff's mortgage. Thereafter, on September 26, 1955, the plaintiff filed an answer to the counterclaims of defendant, Smith, to be followed on January 14, 1956, by the filing by plaintiff of an amended answer to such counterclaims.

There were other attempted interventions by various unsecured creditors about this time in the proceedings in the foreclosure suit. The cause being at issue, trial was had on January 16 and 17, 1956, consuming two days, at the conclusion of which the trial court announced what his decision on the merits would be. Incident to such announcement, the trial judge requested the filing of the findings of fact and conclusions of law for consideration by him in preparing his findings.

So matters stood on January 17, 1956, when the plaintiff in error, Tom Fields, Inc., recovered a judgment for $99.44 before a justice of the peace in Chaves County, New Mexico, which became final on January 28, 1956. On the date last mentioned, an execution was issued on said judgment and returned nulla bona, the reason being that all property of Owl Drug Company was in the hands of the receiver appointed by the court in the foreclosure suit.

On the same date, the plaintiff in error here filed a motion in the foreclosure suit seeking to have the receiver discharged as to sufficient assets to satisfy its judgment before the justice of the peace in the sum of $99.44, recovered against Owl Drug Company as aforesaid. The motion was stricken by the court on February 9, 1956. The requested findings of fact and conclusions of law of defendant Smith were filed with the court on January 30, 1956, and those of plaintiff on the following day, January 31, 1956, along with additional requests by plaintiff on February 7, 1956, all pursuant to the trial court's notice to the parties at the time the court announced what his decision would be at conclusion of the trial.

With the foreclosure suit at this stage of completion and on February 13, 1956, the plaintiff in error filed its petition to intervene on the ground it was a judgment creditor and that all the property of Owl Drug Company was in the hands of the receiver in the foreclosure suit; that most of the property in the hands of the receiver was not covered by the mortgage under foreclosure and various other grounds of challenge to validity of the mortgage such as that it was ultra vires, among other claims.

Counsel for plaintiff in error call our attention to District Court Rule 24, appearing as 1953 Comp. § 21–1–1, divided into subparagraphs a, b and c. The Rule reads:

"(a) *Intervention Of Right*. Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof. (As amended by Court Order effective December 31, 1949.)

"(b) *Permissive Intervention*. Upon timely application anyone may be permitted to intervene in an action: (1) When a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

"(c) *Procedure*. A person desiring to intervene shall serve a motion to intervene upon all parties affected thereby. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought."

It is claimed for the plaintiff in error that, specifically, it is the language of sub-paragraph (a) (3) which controls here. Thus it is its counsel would claim benefit of the rule, deleting language to them deemed immaterial, reading as follows:

"Upon timely application anyone shall be permitted to intervene * * * (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

The rule above quoted on intervention came to us as one of the federal rules of civil procedure somewhat recently adopted by this Court. Prior to its adoption our statute, L.1880, c. 6, 1929 Comp., §§ 105–1501 to 105–1503, on intervention had been held to apply solely to actions at law. Flournoy v. Bullock, Baker & Co., 11 N.M. 87, 66 P. 547, 55 L.R.A. 745. Even though it did not cover suits in equity, it was employed by analogy as a guide on occasions. Compare, Clark v. Rosenwald, 31 N.M. 443, 247 P. 306; State ex rel. Lebeck v. Chavez, 45 N.M. 161, 113 P.2d 179.

The present rule covering interventions coming to us from the federal practice and procedure, we naturally turn to federal texts and decisions for clarification of the

same. As can be seen from a reading of Rule 24, provision is made for permissive intervention and intervention as a matter of right. But whether the one or the other, the language of the rule provides as an initial condition to invoking it, that the claim to its benefit must be "upon timely application." Touching this phase of the matter, the author of the text in 7 Cyclopedia of Federal Procedure, Third Edition, Section 24:31, states:

"In each instance, timely application must be made. Failure to proceed in a timely manner will result in loss of the right to intervene. Courts have been said to be unanimous in requiring prompt action on the part of an intervenor who seeks to assert rights in an action to which he is not a party. However, whether as of right or by permission of the court, Rule 24 is silent as to what constitutes timely application, and the question must be answered in each case by the exercise of sound discretion by the Trial Court. There is, therefore now, as formerly, latitude for the court to allow intervention within what time scope the justice of the case may appear to warrant."

See, also, Cameron v. President and Fellows of Harvard College, 1 Cir., 157 F.2d 993; First State Bank of Chariton, Iowa v. Citizens State Bank of Thedford, D.C.Neb., 10 F.R.D. 424; Simms v. Andrews, 10 Cir.,

118 F.2d 803. In the Cameron case, supra, the court said [157 F.2d 996]:

"* * * an application for permission to intervene must be timely whether it is asserted as a matter of legal right under paragraph (a) or requested as a matter of judicial discretion under paragraph (b)."

As disclosed by some of the cases, just when an application to intervene is timely must depend on the circumstances of each case. Prior to the adoption of Rule 24, we had held that an attempt to intervene after judgment was untimely. Encino State Bank v. Tenorio, 28 N.M. 65, 206 P. 698. While judgment actually had not been entered here, the trial was concluded, the court had announced its decision and called for requested findings from the parties. Entry of judgment in due course was but a formality. Counsel for plaintiff in error has made no explanation below, nor here, as to why it delayed from June, 1955, to January, 1956, in asking intervention.

In the meantime trial had been completed and decision on the merits announced. The trial judge ruled the application was untimely and denied it on that ground. We are not prepared to say there was an abuse of discretion in his action, even if, as contended by counsel for plaintiff in error paragraph (a) of Rule 24 be controlling here, a matter we do not decide. State ex rel.

Meyers Co. v. Raynolds, 22 N.M. 473, 164 P. 830; Martinez v. Cook, 57 N.M. 263, 258 P.2d 375. Compare Pankey v. Hot Springs National Bank, 42 N.M. 674, 84 P.2d 649.

The judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN and KIKER, JJ., concur.

McGHEE, J., having recused himself, did not participate.