## 19251

EDISTO FLEETS, INC., for Itself and all others similarly situated, Appellant, v. SOUTH CAROLINA TAX COMMISSION, Respondent.

(182 S. E. (2d) 718)

*Messrs. Clarkson & McCants,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joe L. Allen, Jr.,* and *G. Lewis Argoe, Jr., Asst. Attys. Gen.,* of Columbia, *for Respondent,*

*Messrs. Clarkson & McCants,* of Columbia, *for Appellant, in reply.*

July 7, 1971.

*Per Curiam:*

We are convinced that the order of the Circuit Court, as reported herewith, correctly disposes of the issues raised by the appellant. The exceptions are overruled and the judgment below is,

Affirmed.

## ORDER

The plaintiff is the wholly owned subsidiary of Edisto Farms Dairy and was organized for the purpose of purchasing vehicles and then leasing the same to Edisto Farms Dairy at an agreed consideration. Both corporations were incorporated under the laws of this State, and the defendant is the agency of the State of South Carolina that is charged with the duty of collecting the taxes levied by Chapter 17 of Title 65 of the 1962 Code of Laws, the same being more popularly known as the Sales and Use Tax Act. The defendant examined the plaintiff's records for the period beginning February 1, 1959 through January 31, 1965, and as a result assessed the plaintiff a tax in the amount of $11,349.80, the same being calculated upon the consideration paid the plaintiff by Edisto Farms Dairy for the lease or rental of the motor vehicles. The defendant gave the plaintiff credit for any tax that had been paid by

the plaintiff upon the sales or purchase price of the vehicles and the plaintiff in this action seeks to recover the above-stated sum, with interest thereon from the date of payment, March 11, 1966.

The action here was commenced on August 25, 1966, by the service of the Summons and the plaintiff instituted the same for other similarly situated taxpayers. The plaintiff alleged that proceeds from the lease or rental of tangible personal property were not subject to taxation and that the lease or rental proceeds paid the plaintiff by its parent were not subject to taxation because of the relationship between the plaintiff and Edisto Farms Dairy.

The matter was by consent referred to the Honorable Harry M. Lightsey, Master in Equity for Richland County, and on September 4, 1968, the case was submitted upon an agreed stipulation with the exception of the testimony of James A. Walton, the Director of the defendant's Sales and Use Tax Division, which testimony was taken and reported by the Master.

The Master, in his well-considered Report of April 2, 1969, found and concluded that the plaintiff could not maintain the action for a class, that the proceeds from the lease or rental of tangible personal property were taxed by the chapter and that the consideration paid the plaintiff by Edisto Farms Dairy was subject to taxation. The plaintiff excepted to the Report and such exceptions were heard on March 9, 1970, at the regular term of the Court of Common Pleas that began on the same date.

Under well settled rules of law, the plaintiff has no standing to prosecute this as a class action. The record does not show the existence of a class of taxpayers that have submitted applications to the defendant for the refund of a tax paid upon the lease or rental or tangible personal property and the denial of such refund claims by the defendant which are constituted conditions precedent by Section 65-2684 for the right to institute such an action against the defendant.

It is equally apparent that the plaintiff has no financial interest in taxes paid by other persons upon the proceeds from the rental or lease of tangible personal property and, in the absence of such interest, may not prosecute this action for their benefit.

"It is fundamental that one without interest in the subject matter of a lawsuit has no legal standing to prosecute it. Accordingly, a person who has no financial interest in taxes alleged to have been erroneously collected has no legal standing to sue for their refund." *Furman University v. Livingston,* 244 S. C. 200, 136 S. E. (2d) 254. (See also *Asmer v. Livingston,* 225 S. C. 341, 82 S. E. (2d) 465; *Desoto Gold-Min. Co. v. Smith,* 49 S. C. 188, 27 S. E. 1; *Wilder v. South Carolina Highway Department,* 228 S. C. 448, 90 S. E. (2d) 635.)

Having thus disposed of the issue relating to the class action, the Court now considers the issue of whether the proceeds from the lease or rental of tangible personal property were subject to taxation under the provisions of Chapter 17 of Title 65. Such issue and the resolve thereof is of material significance to the State of South Carolina in that the record discloses that the tax collected upon proceeds from the lease or rental of tangible personal property amount to * * * a considerable sum.

The defendant administratively interpreted the sales and use tax statutes to exclude such proceeds from taxation until the Order of this Court of August 12, 1959, that was issued in the case of *General Tire and Rubber Company v. South Carolina Tax Commission.* As a result of that order, the Tax Commission reconsidered its administrative interpretation and thereafter held that such proceeds were subject to taxation.

The tax is levied by Section 65-1401 upon "every person engaged or continuing within the State in the business of selling at retail any tangible personal property * * *" and the General Assembly has statutorily defined such persons to include:

"(5) Every person engaged in the business of renting or leasing or otherwise furnishing any tangible personal property for a consideration, either by lease or rental or other form of agreement." Section 65-1359.

This provision was contained in Section 4 of Part 2 of Act 234, Acts of 1955, 49 Statutes at Large, page 436. The plaintiff argues that the same does not include a person leasing or renting tangible personal property for a consideration, but that it is limited in its application to the manufacturer upon whom a tax was also imposed by the Act. Such contention overlooks, however, the significance of the fact that the tax levied upon the manufacturer is imposed "notwithstanding any other provision of law * * *." The tax levied upon the manufacturer is therefore not dependent upon this provision and it is thus evident that any person that leases or rents tangible personal property is expressly declared to be a retailer and subject to taxation by section 65-1401.

This was the conclusion of the Trial Judge in the *General Tire and Rubber Company v. James W. Crain, et al.,* case, which holding has been given effect by the defendant since February 1, 1959. The defendant's long standing construction must be recognized and may not be overruled without cogent reason. *Etiwan Fertilizer Co. v. South Carolina Tax Commission,* 217 S. C. 354, 60 S. E. (2d) 682.

Although the definition of the term "sale" as found in Section 65-1360 does not specifically refer to the lease or rental of tangible personal property, the same nonetheless is included because of the definition of the term "purchase" that is provided in Section 65-1357. The terms "sale" and "purchase" are inextricably related and bound together and must be so construed and the term "purchase" specifically refers to the lease or rental of tangible personal property. This conclusion is fortified by the failure of the General Assembly in 1955 to amend the definition of the term "sale" to specifically include the words "lease or rental of tangible

personal property." It would be unreasonable for this Court to conclude that the General Assembly amended the statute in 1955 to define as a retailer a person that leases or rents tangible personal property and at the same time intend that such person be exempt from the tax because the lease or rental was not a sale of tangible personal property.

The plaintiff, however, further contends that the proceeds are not subject to taxation because it is the wholly owned subsidiary of Edisto Farms Dairy. The contention is based upon the fact that the plaintiff does no business except the rental or lease of the vehicles to the parent. Such contention is without merit and is no basis upon which this Court may conclude that the proceeds are not taxable. The weight of authority is that such a relationship does not preclude the imposition of a tax upon the wholly owned subsidiary. 64 A. L. R. 769.

It is therefore the opinion of this Court that the plaintiff's exceptions should be overruled; that the Master's Report should be sustained and by reference adopted and made a part hereof and that the complaint should be dismissed and the action ended.

BUSSEY and BRAILSFORD, JJ., dissent.

BUSSEY, Justice (dissenting in part).

I most respectfully disagree with the conclusion that the rental proceeds of the plaintiff-appellant were subject to the sales tax imposed and to that extent I dissent.

Factually, it is stipulated that the appellant is not a manufacturer and that it purchased and paid a sales tax on all vehicles and other materials acquired by it for the conduct of its business of leasing vehicles to its parent company. The deficiency assessment by the Commission was arrived at by applying the sales tax to the gross rentals received by appellant and allowing as a credit against the same the amount of sales tax previously paid by appellant upon purchase of its vehicles and other personal property. The liability of the appellant, if any, for the tax thus imposed arises solely out

of a 1955 amendment of the law, about which more will be said later.

From July 12, 1951, when the license, sales and use tax law was first enacted, to February 1959, under defendant's administrative interpretation of the statutes, the proceeds or receipts from the lease or rental of tangible personal property were not subject to taxation, where there was no transfer of title. The Commission adopted Regulation No. 11 to that effect, filed in the Office of the Secretary of State on July 13, 1951, but rescinded January 9, 1959. The Commission did not take its present view of the 1955 amendment until the entry of a decree in the Court of Common Pleas for Richland County in August 1958 in the case of *General Tire and Rubber Company v. S. C. Tax Commission (James W. Crain, et al.)*. Based upon certain language in said decree, the Commission, upon the advice of its counsel, changed its administrative interpretation, effective February 1, 1959, and since that time has imposed a sales tax upon the proceeds of the lease or rental of tangible personal property by taxpayers such as the appellant here. I find nothing in the statutory law, or the circuit court decree, which really warrants the conclusion arrived at by the Commission and sustained by the lower court.

It is the settled law of this jurisdiction that tax statutes cannot be extended by implication beyond the clear import of the language used and that any substantial doubt must be resolved against the state and in favor of the taxpayer. Where a tax statute is ambiguous and it is reasonably susceptible of an interpretation that would exclude taxation, any substantial doubt must be resolved against the state and in favor of the taxpayer. See the many cases collected in West's South Carolina Digest, Statutes,—245.

It is also settled that administrative interpretation of a statute, of long standing, should be given great weight and not overruled without cogent reason. This rule, however, is applied only in cases where the statutory meaning is really doubtful and it affords no basis for perpetuation of a

patently erroneous application of a statute. See West's South Carolina Digest, Statutes,—219; Administrative Law and Procedure,—330. Generally, the usual rules of statutory construction apply to interpretations of statutes relating to taxation; they should be construed to ascertain and give effect to the intent of the legislature. *Meredith v. Elliott,* 247 S. C. 335, 147 S. E. (2d) 244; *Adams v. Burts,* 245 S. C. 339, 140 S. E. (2d) 586.

With the foregoing principles in mind, let us examine the 1955 amendment out of which the liability, if any, of the taxpayer arises. Such amendment was a part of Act No. 234, the General Appropriation Act for that year, and was contained in Sec. 4 of the permanent provisions of said Act at page 436. The Code section amended was devoted to a definition of the terms "retailer" and "seller", for the purposes of the chapter imposing the retail license, sales and use taxes, said amendment reading as follows:

"C. Section 1359, of Article 1, of Chapter 15, of Title 65, Code of Laws of South Carolina for 1952, as amended, is hereby amended by adding thereto Subdivision (5), which shall read as follows:

" '(5). Every person engaged in the business of renting or leasing or otherwise furnishing any tangible personal property for a consideration, either by lease or rental or other form of agreement.'

"Notwithstanding any other provision of law, the license and the sales and/or use tax imposed by Chapter 15, of Title 65, Code of Laws for 1952, as amended, is hereby imposed upon the fair market value of tangible personal property manufactured within South Carolina or imported into South Carolina *by the manufacturer* thereof for the purpose of renting or leasing the same or for storage, use or consumption within South Carolina *by said manufacturer.*" (Emphasis added.)

The only reference to the quoted amendment in the title of the Act is as follows:

"An Act * * * To Provide That The Sales Tax Shall Apply To * * * The Fair Retail Value Of Machines And Other Personal Property Rented By The Manufacturer Thereof For Use In The State * * *."

The caption to Section 4 of the permanent provisions refers to the particular amendment in the following language:

"C. Sec. 65-1359, 1952 Code, Amended—Subdivision (5) added—Terms 'retailer' and 'seller' to include *certain persons* who rent or lease property." (Emphasis added.)

With the full amendment thus before us, what was the legislative intent? The first paragraph thereof broadened the definition of "retailer" and "seller" to include persons engaging in renting or leasing tangible personal property and is literally broad enough to include the taxpayer here, who is not a manufacturer, though the caption of the section and the title of the Act would rather indicate a legislative purpose to additionally include within the definition of "retailer" and "seller" only those manufacturers who rented or leased their manufactured products, rather than selling the same. In any event, this paragraph obviously does not expressly impose any tax. At most, said paragraph, standing alone, subjected the taxpayer in this case, as well as manufacturers, to the license tax imposed upon retailers by what is now Article 2, of Chapter 17, of Title 65, 1962 Code of Laws, and to other pertinent regulatory features of Chapter 17.

Since the Commission and the lower court place stress upon the decision of the circuit court in the General Tire case, let us examine what was there involved and there held. The taxpayer there was a *manufacturer,* furnishing tires to South Carolina Electric & Gas Company on a rental contract denominated a "milage contract" which the Commission apparently contended was a sales contract and had assessed a sales tax upon the rental proceeds. The court held that the contracts were *bona fide* rental ones, rejecting the contention of the Commission, and there was no appeal.

The taxpayer there had voluntarily paid a sales tax or use tax based on the cost of the tires and tubes which it had manufactured and furnished under the rental contracts, although there apparently was no provision in the law which brought such a transaction squarely within the terms of either the sales or use tax provisions. The tax years involved were all prior to the 1955 amendment with which we are here concerned, and that amendment was mentioned in the court decree only as demonstrative of a legislative intent or purpose to make a change in the law. The taxpayer there being a manufacturer, it is obvious that had it been in effect, the 1955 amendment would have been applicable since it imposed a sales or use tax upon the fair market value of the tires and tubes manufactured and furnished or rented by it. The decree appropriately commented that the 1955 amendment was apparently made for the purpose of including such transactions as the court was there concerned with. It contains neither a holding nor even a statement that the 1955 amendment had the effect of imposing a sales tax upon rental proceeds, rather than upon the fair market value, of property leased or rented by a manufacturer or anyone else.

If the first paragraph of the amendment be construed as imposing a tax on the rental proceeds of the taxpayer here involved, it likewise has to be construed as imposing a tax upon the rental proceeds of a manufacturer. Certainly the legislature did not intend to impose a tax on both the rental proceeds of a manufacturer and at the same time on the fair market value of the personal property rented by it. That the legislature did not so intend is strongly and clearly evidenced by the fact that it did, by Act No. 289 of the Acts of 1963, with specific respect to manufacturers, impose a sales tax upon the gross rental or lease proceeds rather than upon the fair market value of the rental property which had previously been the case. That Act further provided that where the manufacturer had already paid a tax based upon the fair market value prior to June 30, 1963, no tax

was imposed upon the proceeds of the lease or rental of such property.

In the present case neither the record nor the briefs indicate any contention on the part of the Commission that the taxpayer here was, by any provision of the law, exempted from the payment of the sales tax, which actually was paid on the vehicles and other equipment acquired by it for its business. Despite the fact that the Commission gave it credit therefor, I know of no provision of the law so exempting it. It is not at all reasonable to suppose that the legislature intended to impose on a taxpayer, not a manufacturer, both a sales tax on the purchase price of its equipment and a sales tax on rental proceeds, any more than it would impose such double taxation upon a manufacturer.

"It is sometimes said that the double taxation held to be invalid is generally confined to property tax; but, regardless of the Legislature's *authority* to impose a double tax, the presumption is always against its *intention* to do so, and the courts will not construe a statute as imposing a double tax, unless such intention is clear from its terms or by necessary implication." *Wingfield v. S. C. Tax Commission,* 147 S. C. 116, 144 S. E. 846, 854.

The 1955 amendment did not undertake to amend the definition of the term "sale" contained in Code Sec. 65-1360. Admittedly, a lease is not a "sale" within that statutory definition. The word "rental", *inter alia,* is mentioned as a consideration in the definition of the term "purchase" contained in Code Sec. 65-1357. Based on that single word, "rental", it is argued that the terms "sale" and "purchase" are inextricably related and bound together and that accordingly the term "sale" must be construed as including "lease or rental of tangible personal property."

There is no merit in such contention. An analysis of the entire Act quite clearly shows that the terms "sale" and "purchase" are not inextricably related and bound together. The term "sale" is defined, at least primarily, for the purpose

of the *sales tax* imposed by Code Sec. 65-1401. The term "purchase" is defined, at least primarily, for the purpose of the *use tax* imposed by Sec. 65-1421 upon "the storage, * * * of tangible personal property purchased at retail for storage, use, * * *." Personal property upon which the *sales tax* has already been paid is exempted from the *use tax* and the purpose of the article imposing the *use tax* is the prevention of the evasion of the *sales tax*, by purchasing from without the state, or under other circumstances by which the *sales tax* might be avoided. *State ex rel. Roddey v. Byrnes,* 219 S. C. 485, 66 S. E. (2d) 33.

When the difference between the sales tax and the use tax is kept in mind, it is readily apparent why the word but appears nowhere in the definition of the term "sale."

In this case there has been no "sale" by the taxpayer and the only "purchases" have been ones upon which the taxpayer has paid the sales tax upon the purchase price or prices. The statutory definition of "purchase" does not strengthen the claim or interpretation by the Commission.

It is argued that the first paragraph of the 1955 amendment, when construed in conjunction with Sec. 65-1401, has the effect of imposing the sales tax upon the rental proceeds of tangible personal property. Conceding that the amendment makes the taxpayer here a "retailer" or "seller", Sec. 65-1401 does not levy the sales tax simply upon a "retailer" or "seller", but rather "upon every person engaged or continuing within this state in the business of *selling at retail* any tangible personal property * * *" (Emphasis added). By contrast, the license tax is imposed upon a "retailer", and the taxpayer here apparently concedes that it is subject to the payment of the license tax.

That the legislature did not intend, however, by the 1955 amendment to apply the sales tax to rental proceeds is to my mind clearly demonstrated by reference to other provisions of the Act containing the amendment. Subsection B of Section 4 of the permanent provisions of that

Act, immediately precedes the amendment, with which we are here concerned, and imposed for the first time the license, sales and/or use taxes upon persons furnishing lodgings and accommodations to transients for a consideration. In order to accomplish the desired result, the General Assembly first extended the statutory definition of "tangible personal property" to include such rooms, etc.; it then extended the definition of "retailer" and "seller" to include persons engaged in the business of furnishing such lodgings and then, *contra* to the amendment with which we are here concerned, went on to expressly and specifically impose the tax upon the rental proceeds from such accommodations. Moreover, the title of the Act makes reference to subsection B, which imposed the tax upon the proceeds of rooms, etc., in the following language:

"An Act * * * To Provide That The Sales Tax Shall Apply To Charges For Rooms, Lodgings Or Accommodations Furnished To Transients For A Consideration * * *."

By contrast, as above pointed out, the title referred to the amendment, here relied upon, as applying the sales tax to the *fair retail value of the property rented.*

It rather clearly appears from the foregoing that when the legislature intended to apply the sales tax to income or proceeds not theretofore subject to the tax, it chose explicit language of clear and specific import to accomplish the result. When it failed to use equally specific language in the immediately following amendment with which we are here concerned, it seems clear to me that it did not intend by the mere enlargement of the definition of "retailer" and "seller" to impose a tax burden on rental proceeds not theretofore taxed, and not even mentioned in the particular amendment.

When the particular amendment is read in the light of the title of the Act, the caption of the particular section, and the other contents of the section, I consider it more

than probable that the legislature did not intend the particular amendment to have any application to any one other than manufacturers who leased instead of selling products which they themselves manufactured. As applied to the instant taxpayer, I conclude that the only effect, possibly intended, was to impose upon it a license tax and subject it to pertinent regulatory features of the law.

If all of the foregoing simply created nothing more than a substantial doubt, the taxpayer, under the settled law, would be entitled to a reversal of the lower court and a refund. While conceding some plausibility to the arguments advanced in support of the interpretation by the Commission, such, nevertheless, appears to be clearly and demonstrably *contra* to the intention of the legislature. The fact that such interpretation is one of long standing, therefore affords no basis for its perpetuation. In this connection, the record discloses no competent evidence, or facts, from which it could be reasonably inferred that the erroneous interpretation by the Commission has been brought to the attention of or acquiesced in by the General Assembly.

Since, in my view, the taxpayer is clearly entitled to a refund, I would accordingly reverse the judgment of the lower court.

BRAILSFORD, J., concurs.