547 P.2d 1147
**John J. O'HARE, Gary E. Samlin, J. Sanchez, Jr., Raymond J. Jaramillo, Margaret V. Sanchez, Adobe Acres Improvement Association, et al., Plaintiffs-Appellees,**

v.

**VALLEY UTILITIES, INC., Defendant-Appellant.**

**No. 1843.**

Court of Appeals of New Mexico.

Jan. 6, 1976.

Certiorari Issued Feb. 18, 1976.

Walter R. Kegel, Ralph M. Montez, Kegel & McCulloh, P. A., Santa Fe, for defendant-appellant.

Charles T. DuMars, James K. Gilman, Albuquerque (William R. Murphey, Sp. Asst. Atty. Gen., Santa Fe, amicus EIA) (Paul Biderman, Sp. Asst. Atty. Gen., amicus A.G.), Santa Fe, for plaintiffs-appellees.

## OPINION

LOPEZ, Judge.

This appeal grows out of a suit by water users in the Adobe Acres Subdivision in Albuquerque against the utility which supplied their water, Valley Utilities, Inc.

The action was brought by five individual plaintiffs and the Adobe Acres Improvement Association on behalf of themselves and 475 water users in the subdivision. The plaintiffs asked tort and contract damages by reason of the utility's failure to supply water meeting certain minimum standards of quality. Following

a jury verdict for the plaintiffs, the defendant has appealed raising numerous issues of law.

## I. *Class Action*

The defendant's first point of error is that the case should never have been permitted to proceed as a class action. The defendant asks that the judgment be affirmed only with respect to the individual named plaintiffs. The defendant raises a number of arguments with respect to this point, but rather than specifically enumerating all of them we shall refer to them in the course of the opinion.

The Adobe Acres Subdivision contained 475 homes which subscribed to the defendant's service. Of these homes 272 households belonged to the Adobe Acres Improvement Association. This Association is a nonprofit corporation. Prior to the start of the trial, the plaintiffs attempted in two different ways to inform residents of the subdivision of the pendency of the suit. One way was the distribution of a one page notice which was addressed to "Resident of Adobe Acres" and which stated that a suit had been filed against Valley Utilities, Inc. It warned that all residents would be bound by the judgment unless they notified the court or the plaintiffs' attorneys that they wished to be excluded. This notice was delivered by eleven adult residents of the subdivision; the distribution committee chairman testified the method of delivery was to give the notice to the resident personally, or if the resident was not home, to put it in the screen door or the mailbox. Secondly, the Association published a newsletter which was also distributed to all residents of the subdivision; the method of distribution is unclear from the record. The newsletter did not inform the residents that the suit was binding, or that they could intervene.

The defendant objected throughout the proceedings to allowing the case to proceed as a class action. Nonetheless, the case was presented as a class action and the jury was so instructed. The jury verdict was for 475 members of the class in the amount of $1,000.00 apiece. The trial judge entered judgment for the 272 persons who were members of the Association, deeming them members of a "true" class. He directed that notice be given to the other residents of the subdivision and that they be permitted to intervene upon application. These nonmember residents were said to constitute a spurious class.

A major source of confusion in the case has been created by the distinctions between "old" Rule 23 and "new" Rule 23 of the Rules of Civil Procedure. Section 21–1–1(23), N.M.S.A.1953 (Repl. Vol. 4), and Rule 23, Fed. Rules of Civ.P., respectively. New Mexico's Rule 23 reads as follows:

*"Rule 23. Class actions.*

"(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one [1] or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

New Mexico has not adopted the amendment to this rule which was implemented in the federal system in 1966.

Under our Rule 23 the crucial question is the species of class. This determination requires an examination "of the abstract nature of the rights involved".

Committee Note of 1966 accompanying amendment to Rule 23, Fed. Rules of Civ. P.

Once the classification is determined, the question of whether the judgment is binding on absent parties is resolved. This process of categorization has been assailed as irrelevant to the criteria which should determine whether absent parties are bound (Developments in the Law-Multiparty Litigation in the Federal Courts, 71 Harv.L. Rev. 874, at 936 (1958)) and it is such criticism which led to the substantial amendment of this rule. Nonetheless, we shall accord the traditional interpretation to our rule, since it has not been amended.

The threshold question is whether the subdivision members form a true or spurious class. Rule 23 directs attention to the nature of the rights which the class seeks to enforce. In order to form a true class, the rights must be "joint" or "common" to the class. In order to form a spurious class, the rights must be "several" and there must be common questions of law and fact. "Joint" has a well accepted meaning in the law, and has not proved difficult to apply. Moore, in his Treatise, says a right is joint if, in the absence of the class action device, joinder would be essential. 3B Moore's Federal Practice ¶ 2308 (2d Ed. 1975); *Tunstall v. Brotherhood of Locomotive Firemen and Enginemen,* 148 F.2d 403 (4th Cir. 1945). The right involved here is not joint. The concept of a "common" right has caused more difficulties. See, Chafee, Some Problems of Equity, 255–57 (1950) ; 7 Wright and Miller, Federal Practice and Procedure: Civil, § 1752 at 516 (1972). It acquires meaning when contrasted to the rights asserted by a spurious class.

■ In this case a persuasive argument can be made that all plaintiffs have been injured by the same breach of duty by the defendant and in this sense claim a common right. However, the plaintiffs are asserting that the defendant owes them duties as individuals. In addition, the residents might have been damaged in varying degrees, and since our true class action does not provide for "opting out" of a class, all class members would be bound by the common judgment and unable to receive their individual damages. We conclude that the subdivision residents do not form a true class since they are not enforcing a right held in common. They do form a spurious class, in that common questions of law and fact relating to the defendant's actions are raised by their claims.

Decisional law, although admittedly far from consistent, lends support to our conclusion. In *Rank v. (Krug) United States,* 142 F.Supp. 1 (S.D.Cal.1956), various landowners were permitted to sue as a true class when they sought injunctive relief against the government's interference with riparian rights. The court noted that the right sought to be enforced was a common one to water from a common source, and distinguished it from the situation where the parties were seeking an adjudication of their individual rights to water. This case was later discussed in *Puget Sound Alumni of Kappa Sigma v. City of Seattle,* 70 Wash.2d 222, 422 P.2d 799 (1967). In *Puget Sound* a group of abutting landowners sued to recover amounts wrongfully collected by the city upon their petition to vacate certain streets. The amounts paid by the landowners varied with the appraised values of the vacated streets, yet the legal issue was identical for each landowner. The court held the claims were several, and the class was therefore spurious. Compare cases discussed in Wright and Miller, supra, at 516–17 with those discussed at 528–34.

■ The plaintiffs do not contend that the nonmembers of the Association are members of a true class. They do maintain, however, that the Association constitutes a true class and that the judgment is therefore binding on the Association members. Their first argument is based on the common predicament and jural relationship existing between members of the Association. Since the predicament was

common to all subdivision residents, it is the jural relationship upon which this argument rests. The Association is incorporated as a nonprofit corporation, and nonprofit corporations have the right to sue. Section 51–14–30, N.M.S.A.1953 (Repl.Vol. 8, pt. 1). However, a corporation's right to sue for relief as an entity and its right to sue for recovery for its individual members is not identical. This distinction is explained in *Gonzales v. Oil, Chemical and Atomic Workers International Union AFL–CIO,* 77 N.M. 61, 419 P.2d 257 (1966) in the analogous situation of a suit against an unincorporated association. In *Gonzales* a union was sued for damages incurred during a labor dispute. The court held that the union, as an entity, could be sued under the New Mexico statute which provides that an unincorporated association may be sued in its own name. Section 51–18–5.1, N.M.S.A.1953 (Repl. Vol. 8, pt. 1). However, the court also held that individual union members could not be held individually liable under this statute without proof of a Rule 23 class. Thus, the jural relationship is unavailing, except insofar as individuals have rights as members of that entity, which is a claim not at issue here. Compare *Montgomery Ward & Co. v. Langer,* 168 F.2d 182 (8th Cir. 1948) with *Farmers Co-operative Oil Co. v. Socony-Vacuum Oil Co.,* 133 F.2d 101 (8th Cir. 1942).

The plaintiffs also argue that cases arising under New Mexico's other class action statute, § 21–6–1, N.M.S.A.1953 (Repl.Vol. 4), should be considered as guidance for the nature of a true class action. This statute is based on Rule 38 of the Equity Rules of 1912, which in turn formed the basis of our present Rule 23. 3B Moore's Federal Practice ¶ 23.02[1] at 23–74 (1975). What can be gained by reference to this rule is unclear. The binding effect of judgments on absent parties under Rule 38 was unsettled. 7 Wright and Miller, Federal Practice and Procedure: Civil § 1751 at 509 (1972). In all of the cases relied on by the plaintiffs, the relief sought was injunctive or declaratory, (see, e. g., *Pecos Valley Artesian Conservancy District v. Peters,* 50 N.M. 165, 173 P.2d 490 (1945); *Key v. George E. Breece Lumber Co.,* 45 N.M. 397, 115 P.2d 622 (1941)) so that the commonality of the relief sought is apparent.

Finally, we are faced with the problem of determining what rights under the judgment are possessed by this class which we here hold to be spurious. The case was tried and presented to the jury, as a class action involving a class of 475 resident water users. The jury verdict was for 475 persons in the amount of $1,000.00 apiece. Following the verdict the court entered judgment for the members of the Association and deferred judgment for the other residents until they returned the applications for intervention. We approve the procedure devised by the trial judge for the nonmember residents and remand with directions to allow intervention by the Association members under the same procedure.

In endorsing the intervention procedure, we are guided by the authority of *Union Carbide and Carbon Corporation v. Nisley,* 300 F.2d 561 (10th Cir. 1962). In that case the Tenth Circuit approved this approach because it results in " . . . more expeditious and efficient disposition of litigation." Although no New Mexico cases have dealt with the issue of intervention in the context of a class action, the principles established in other intervention cases are helpful. The timeliness of intervention depends upon the circumstances of each case. *Apodaca v. Town of Tome Land Grant,* 86 N.M. 132, 520 P.2d 552 (1974). The trial judge is given a great deal of discretion in determining whether to allow intervention. *Apodaca v. Town of Tome Land Grant,* supra; *Cooper v. Albuquerque City Commission,* 85 N.M. 786, 518 P.2d 275 (1974); *Tom Fields, Ltd. v. Tigner,* 61 N.M. 382, 301 P.2d 322 (1956). Most importantly, the decision whether to allow intervention is governed by equitable principles. *Richins v. Mayfield,* 85 N.M. 578, 514 P.2d 854 (1973).

In the case before us the action was tried as a class action. The jury verdict was for the whole class and the judge included the whole class in his judgment. The defendant is therefore not prejudiced by allowing the absent parties to be identified, since the jury has already determined that defendant is liable and the defendant has not challenged the damage award. Finally, we do not understand why the defendant would want the result otherwise. If we were to deny the absent members' right to intervene, the defendant would be faced with separate suits by each of them, with the result foreordained. The court's statement in *Union Carbide* is apt here: "Defendants' liability and the extent thereof has been completely proven by the named plaintiffs and it would be grossly redundant to say that it must be proven again by the unnamed members of the represented class." *Union Carbide and Carbon Corporation v. Nisley,* supra.

II. *Primary Jurisdiction*

The second point raised by the defendant is that the doctrine of primary jurisdiction applied to this case and the trial court was without jurisdiction to decide it.

■ Primary jurisdiction, as interpreted by the New Mexico Supreme Court in *Norvell v. Arizona Public Service Co.,* 85 N.M. 165, 510 P.2d 98, 60 A.L.R.3d 653 (1973), is essentially a doctrine of comity between the courts and administrative agencies. The invocation of the doctrine depends on whether the questions presented are "exclusively factual issues within the peculiar expertise of the commission" or "if statutory interpretation or issues of law are significant". *Wisconsin Collectors Assn. v. Thorp Finance Corp.,* 32 Wis.2d 36, 145 N.W.2d 33 (1966).

■ In the case before us the trial court was correct in assuming jurisdiction. The contrast with the situation in *Norvell* is pronounced. In *Norvell,* the plaintiffs were asking a court to declare in the context of a public nuisance action, that the defendants' actions were harmful. This would have required the court to formulate a standard of harmfulness, which would presumably be determined independently of the standard already established by the Board. In our case the standard had been set by the Public Service Commission and the Environmental Improvement Agency and the plaintiffs asked a jury to answer the traditional legal question of whether the duty established by that standard was breached.

In *Norvell,* the court considered at great length the powers and duties entrusted to the agency, in determining whether the agency had jurisdiction over the plaintiffs' complaints. The relief asked was identical to the relief which the agency could have granted. The plaintiffs here had originally asked injunctive relief, but at the court's order amended their complaint to ask only monetary relief. The Environmental Improvement Agency and Public Service Commission have no expertise in considering tort and contractual claims and are without power to grant the relief that the plaintiffs have asked.

■ The Environmental Improvement Agency, which has filed an amicus brief asking that the doctrine of primary jurisdiction be held not to apply, has stated that they are without jurisdiction to act on the plaintiffs' complaint. They point to § 75–39–12 of the Water Quality Act (§§ 75–39–1 through 75–39–12, N.M.S.A.1953 (Repl. Vol. 11, pt. 2)) which evidences the legislative intent that common law remedies against water pollution are preserved. Specific legislative declarations that common law remedies are unimpaired are uniformly respected when primary jurisdiction questions arise in the field of public nuisance. 60 A.L.R.3d § 2[a] at 669 (1974). See, *People v. Los Angeles,* 160 Cal.App.2d 494, 325 P.2d 639 (D.Ct.App.2d D.1958); *J. D. Jewell, Inc. v. Hancock,* 226 Ga. 480, 175 S.E.2d 847 (1970); *State v. Town of Huntington,* 67 Misc.2d 875, 325 N.Y.S.2d 674; aff'd 37 A.D.2d 858, 326 N.Y.S.2d 981 (S.Ct.1971).

The trial court correctly retained jurisdiction of the case.

### III. *Modification of Instruction*

The defendant argues that the trial court's modification of a uniform jury instruction constitutes reversible error. The instruction given was:

> "No. 31—In fixing the amount of money which will reasonably and fairly compensate the plaintiffs, you are to consider that a person who is damaged must exercise ordinary care to minimize existing damages and to prevent further damages. Plaintiffs may not recover for losses which could have been prevented by reasonable efforts on his part, but the cost of minimizing damages may be considered a compensable damage."

U.J.I. 14.27, with the addition of underlined segment which was added by the trial court.

The discussion of the instructions took place off the record. The trial court did not state of record reasons for the modification as is required by statute. Section 21–1–1(51)(1)(c), N.M.S.A.1953 (Repl. Vol. 4); *Anderson v. Welsh*, 86 N.M. 767, 527 P.2d 1079 (Ct.App.1974). Nonetheless, there was evidence in the record to support the modification and the defendant has failed to show any prejudice resulting from the modification. *Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970).

### IV. *Addition of an Instruction*

The defendant objects because an instruction was given regarding a corporation's liability for actions committed while the corporation was under different ownership. This instruction is not found in U.J.I. The defendant does not argue that the instruction given does not meet the requirements of § 21–1–1(51)(1)(e), N.M. S.A.1953 (Repl. Vol. 4), but rather that the Committee Comment to U.J.I. 4.11 states that U.J.I. 4.11 is sufficient for any issue of liability of a corporation. The Committee Comments are not the equivalents of the Directions for Use. Thus, in this very instruction the Directions for Use suggests an additional instruction may be necessary, despite the contrary suggestion in the Comment. No error was committed in giving an additional instruction.

### V. *Cross-examination*

The defendant's fifth point of error is that the trial court erred in limiting its cross-examination of Mr. Wright, the state's Water Quality Control Director. The defendant contends that Mr. Wright on direct examination had recommended installation of water softeners on a system wide basis, instead of in individual homes and that the defendant should therefore have been allowed to show that no other communities had been required by Mr. Wright to have such a system. To the degree the questioning would have related to the Environmental Improvement Agency's enforcement policies it was irrelevant, because the issue was the reasonableness of the actions taken by this defendant and this reasonableness varied with the circumstances of every system. The refused questioning was helpful in demonstrating the weaknesses of one of the suggestions made by the witness. However, we fail to see any prejudice to the defendant since the proffered question had already been asked on direct examination. The witness testified that one community did have a softening procedure but the cost and management of that system had been unsuccessful. He added that he knew of no other systems which softened water on a system wide basis. The refused question was answered and therefore no prejudice occurred.

### VI. *Set-off Damages*

The defendant complains of the refusal of the trial court to allow him to present evidence of set-off damages. These damages were offered with respect to certain named plaintiffs who maintained their own wells and who had asked special damages. Since the jury awarded no special damages, and since the defendant had only asked for damages as a set-off against special damages awarded these plaintiffs, the question is moot.

VII. *Defendant's Financial Condition*

The defendant appeals the trial court's refusal to allow him to present evidence of the utility's financial condition. The purpose of introducing this evidence, we are informed on appeal, was to demonstrate that the expenses incurred in making these improvements would have resulted in high costs to consumers. This argument is irrelevant in a case based on liability in tort and breach of contract. Furthermore, the rate relief which the Public Service Commission might have given had the defendant pursued ameliorative measures is entirely distinct from the relief sought in this case. See, *Southwestern Public Service Co. v. Artesia Alfalfa Grower's Association*, 67 N.M. 108, 353 P.2d 62 (1960).

VIII. *Res Judicata*

The defendant argues that the rulings of the Public Service Commission are res judicata with respect to the members of the Adobe Acres Improvement Association. This contention was not pled in the answer and is therefore waived. Section 21–1–1(8)(c), N.M.S.A.1953 (Repl. Vol. 4, Supp.1973 (addendum)); *Skidmore v. Eby*, 57 N.M. 669, 262 P.2d 370 (1953).

The case is affirmed with respect to liability. With respect to damages the case is remanded to allow the Association members to intervene on terms consistent with this opinion.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

SUTIN, Judge (dissenting).

I dissent, not out of sympathy for the defendant, but out of love for those principles of law which govern class actions under old Rule 23(a), amended in the federal rules in 1966. The innovation of class actions in New Mexico will cause serious problems until Rule 23(a) is amended by the Supreme Court. Trial courts and lawyers need guidance in class actions, complicated by large groups of class members,

principles of intervention, res judicata, statutes of limitation, evidence, jury trials and the large expanse of time involved.

A. *Adobe Acres had no standing to sue as a party plaintiff.*

Defendant contended that Adobe Acres Improvement Association (Adobe Acres) was not a proper party plaintiff; that it was not, as an association aggrieved, nor did it suffer damages from the alleged actions of defendant; that it has no building or any structure known to be serviced by defendant; that it is not a real party in interest; that it has no right to sue and, therefore, it cannot represent absentee members of the suing class. I agree.

Plaintiffs did not meet this contention.

Abode Acres is a nonprofit corporation entitled to sue. Section 51–14–30, N.M.S.A. 1953 (Repl. Vol. 8, pt. 1). But before Adobe Acres has standing to sue in this case, defendant must invade some private right of Adobe Acres. *State ex rel. Overton v. New Mexico State Tax Com'n*, 81 N.M. 28, 462 P.2d 613 (1969).

What private right of Adobe Acres was invaded? Its Articles of Incorporation provide for group action to promote activities and projects beneficial to all parties who have an interest in Adobe Acres.

There is not a scintilla of evidence that defendant intruded upon or attacked any activity or project of Adobe Acres, nor that Adobe Acres had an activity or project which sought to prevent water damage by defendant to its members' homes.

Article IV of the Articles of Incorporation states:

The corporation will not be operated for profit or pecuniary gain to its members.

Adobe Acres, as plaintiff, sought recovery of compensatory damages for all of its members. This it had no power to do. It was not allowed by statute. Section 51–14–24.

"It is fundamental that one without interest in the subject matter of a law suit has no legal standing to prosecute it."

Quoted in *Edisto Fleets, Inc. v. South Carolina Tax Com'n*, 256 S.C. 350, 182 S.E.2d 713, 714 (1971); *California Apparel Creators v. Wieder of California*, 162 F.2d 893 (2d Cir. 1947).

Adobe Acres had no standing to prosecute this case as a party plaintiff and could not, therefore, represent interests of the class. *Albertson's Inc. v. Amalgamated Sugar Company*, 62 F.R.D. 43 (D.C.Utah 1973).

### B. *Individual plaintiffs had standing to bring this spurious class action.*

Defendant claims that (1) "the class itself has not been identified"; (2) "the remaining named Plaintiffs have not demonstrated that they adequately represent a class other than themselves * * *"; (3) notice to the class was deficient.

*Ridley v. First National Bank in Albuquerque*, 87 N.M. 184, 186, 531 P.2d 607, 609 (Ct.App.1974) states:

A class action suit does not exist just because it is so designated by the pleadings. Rather, the plaintiffs must prove that all the elements required to make the case a class action are present. *Rossin v. Southern Union Gas Company*, 472 F.2d 707 (10th Cir. 1973). * * *

In order to qualify for a class action, plaintiffs have the burden of showing that the prerequisites of Rule 23(a) are satisfied and, in addition, plaintiffs must show that the class action comes within one of three categories enumerated. *City of Philadelphia v. Emhart Corporation*, 50 F.R.D. 232 (U.S.D.C.E.D.Pa.1970). *Ridley,* supra [87 N.M. at 188, 531 P.2d 607], (Sutin, J., dissenting).

### (1) *Plaintiffs' class action was identified.*

In the individual plaintiff's class action, a "spurious" class was represented by those individually named. It was identified by the notice in evidence given to residents of Adobe Acres Subdivision of the right to permissive joinder.

A "spurious" class suit is an opprobrious epithet to distinguish it from a truly representative action. It is little more than an invitation to non-parties closely interested to intervene. *Nagler v. Admiral Corporation,* 248 F.2d 319 (2d Cir. 1957).

The "spurious" class suit in the *original* Rule 23(a) is explained in 3B Moore's Federal Practice, § 23.10, as follows:

The spurious class suit was a permissive joinder device. The presence of numerous persons interested in a common question of law or fact warranted 'its use by persons desiring to clean up a litigious situation. While a purist might not like to have the third type of class action termed spurious, this label served to direct attention to the practical realities of litigation. The character of the right sought to be enforced for or against the class was

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

There is no jural relationship between the members of the class; unlike for example, the members of an unincorporated association, they had taken no steps to create a legal relationship among themselves. They were not fellow travelers by agreement. The right or liability of each was distinct. The class was formed solely by the presence of a common question of law or fact. When a suit was brought by or against such a class, it was merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted. It was an invitation and not a command performance.

Defendant claims that the class action was not identified because of the judgment rendered on the jury verdict. The jury returned a verdict in the "sum of $1,000.00 per member of the class representing the common damages to each individual of the class or a total sum for all 475 members of the class: $475,000.00". Each individual plaintiff was denied any recovery for special damages.

The judgment stated that Adobe Acres was a "true" class and the remaining resident-subscribers not members of Adobe Acres was a "spurious" class. Although, in my opinion, the judgment is erroneous, it does properly identify the "spurious" class.

### (2) *Proof of adequate representation was unnecessary.*

On motion for directed verdict, denied by the trial court, defendant contended that "there is no adequate proof that the plaintiffs individually fairly and properly represent the entire class of citizens in Adobe Acres."

Do five persons out of 500 families adequately represent the "spurious" class? Under old Rule 23(a), they do.

In *Ridley,* supra, I said:

In this type of class action, adequacy of representation is not required. The reason is that this type of class action is, in actuality, equivalent to a permissive joinder device; and judgment will only be res judicata as to plaintiffs who were actually joined. Members who were not actually joined will not be legally affected, even though they have an interest in the outcome of the suit. [87 N.M. at 193, 531 P.2d at 616, Sutin, J., dissenting]

The "spurious" class action could proceed without evidence of adequate representation.

Rule 23(a) should provide for findings by the trial court, after notice to the class members, that a sufficient number of the class desires to participate in the suit to justify its maintenance as a class action. See, *Vasquez v. Superior Court of San Joaquin County,* 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (1971).

### (3) *Notice given and distributed sufficiently complied with Rule 23(a).*

Defendant contends (a) that notice to absentees in a class action is required under the due process clause of the Fourteenth Amendment; (b) that notice is specifically required under Rule 23(a); (c) that the trial court must supervise notice in class action suits; (d) that plaintiffs' "notice" does not comply with due process or Rule 23(a).

Plaintiffs' notice complied with the federal amended rule. It apprised the class members of the pendency of the suit. It stated in part:

In the event the case goes to trial as a class action, the effect of a class action is as follows:

1) The Final Judgment of the Court, whether favorable or not to the residents, will be binding upon all residents, *unless he or she wishes to be excluded from the lawsuit.*

2) Each resident has the right, *if he or she so chooses, to be excluded from the lawsuit* by so notifying the Court or Plaintiffs' attorneys in writing before June 18, 1974. [Emphasis added]

Notice to absentees in a class action is required to fulfill the requirements of due process when the rule specifically provides for it. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Under Rule 23(a), as federally amended, the sufficiency of the notice to members, when requested by plaintiff, is under the control and discretion of the trial court. *Gold Strike Stamp Company v. Christensen,* 436 F.2d 791 (10th Cir. 1970). However, under old Rule 23(a), no case appears on the scene that the trial court must supervise the sufficiency, nor the distribution, of the notice.

*Eisen,* supra, simply concludes, under the federal rule, that it "requires that individual notice be sent to all class members who can be identified with reasonable effort." [94 S.Ct. at 2152].

This requirement can be accomplished by mail or delivery to the class member personally or at his residence. The record shows that a copy of a sufficient notice was "distributed to each house in the Adobe Acres Subdivision".

The notice given and distributed complied with the requirements of Rule 23 (a).

C. *The judgment is erroneous and should be amended.*

   (1) *Only named plaintiffs are entitled to judgment.*

On June 27, 1974, the jury returned a verdict "for each member of the class including named plaintiffs, but excluding Plaintiff O'Hare, the following sum of $1,000.00 per member of the class representing the common damages to each individual of the class or a total sum for all 475 members of the class: $475,000.00".

*On July 9, 1974, a judgment was entered* that:

   1. Each of the 272 members of the class who are also members of the Plaintiff Adobe Acres Improvement Association recover of the Defendant $1,000.00 per class member for a total of $272,-000.00.

Neither Adobe Acres nor its members were proper parties to this action. Plaintiffs erroneously proceeded on the basis of a "true" class action by Adobe Acres, a judgment which would have bound all of its members.

The only parties entitled to judgment were the named plaintiffs, excluding O'Hare.

The judgment should be amended to allow the four named plaintiffs to recover $1,000.00 each.

(2) The second provision of the judgment afforded the remaining class members an opportunity to intervene.

A review of the record discloses that no such right was preserved.

On July 11, 1974, after judgment had been entered, the court issued a notice to members of the class that if they wished to participate in the judgment against defendant, they must complete an enclosed form and return it to plaintiffs' attorney within 60 days after entry of the judgment.

A judgment on their behalf would be deferred until the expiration date.

The form enclosed was a petition by the class member to permit intervention. It provided for the name and address of the applicant and his or her interest in Abode Acres Subdivision and the length of residence.

On July 25, 1974, about 96 applications for permission to intervene were filed.

*On August 8, 1974, defendant filed its notice of appeal of the judgment.*

On August 15, 1974, about 304 applications for permission to intervene were filed.

No order was entered which allowed intervention. No further judgment was entered upon behalf of the class members who petitioned for intervention.

Was the judgment appealed from *final*?

Rule 54(b)(2) of the Rules of Civil Procedure applies to judgments involving multiple parties [§ 21–1–1(54)(b)(2), N.M.S.A.1953 (Repl. Vol. 4, 1975 Supp.)]. It reads:

When *multiple parties* are involved, judgment may be entered adjudicating all issues as to one [1] or more, *but fewer than all parties.* Such judgment shall be a *final* one unless the court in its discretion, *expressly provides otherwise and a provision to that effect is contained in the judgment.* If such provision is made, then the judgment shall *not* terminate the action as to *such party or parties and shall be subject to revision at any time before the entry of judgment adjudicating all claims and the rights and liabilities of all the parties.* [Emphasis added]

The judgment expressly provided for intervention, but it did not reach the class members because they were not yet parties to the action.

"* * * [R]elief attained in class suits under Rule 23(a)(3) extends only to the named plaintiffs actually becoming parties before judgment." *McGrath v. Tadayasu Abo,* 186 F.2d 766, 770 (9th Cir. 1951);

*All American Airways v. Elderd,* 209 F.2d 247 (2d Cir. 1954).

The judgment is final as to the four named plaintiffs who are the only parties to the judgment and appeal. Intervenors who are not parties to the judgment cannot seek relief on appeal.

### (3) *The judgment can recite the issues finally determined.*

Restatements, Judgments, § 26, applies to representative or class actions. It reads:

> Where a class action is properly brought by * * * members of a class, the court has jurisdiction by its judgment to make a determination of issues involved in the action which will be binding as res judicata upon other members of the class, although such members are not personally subject to the jurisdiction of the court.

Comment (a) states that in the judgment, the trial court can "make a final determination as to the issues decided in the class action which will be conclusive as to those issues, not only as to the parties who are personally subject to the jurisdiction of the court but also as to those who are not so subject."

If this appeal were reversed and remanded, the trial court could accomplish this objective.

### D. *Procedural policy dictates that intervention of class members should take place before judgment is entered.*

There is a strong diversity of opinion whether, in a "spurious" class action, class members might be able to intervene *after* a decision on the merits favorable to their interests, although they would presumably be unaffected by an unfavorable decision. As to the propriety of this so-called "one way" intervention, see the conflicting views in *Union Carbide and Carbon Corporation v. Nisley,* 300 F.2d 561 (10th Cir. 1961), pet. cert. dismissed, 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1963); 3B Moore's Federal Practice, § 23.01 [11-3]. The majority

opinion permits intervention by class members after rendition of the verdict, but before *final* judgments are entered *after* intervention. [300 F.2d at 589]. The dissenting opinion does not. [300 F.2d at 601].

It is important to notes three things: *First,* none of the cases cited and none found to date, have involved proceedings after verdict of the jury and judgment rendered. *Second,* Rule 23(a) does not provide for whom the benefits are intended. It is silent on the subject. This appears to be the first case in which a verdict and judgment is entered and intervention by absentees is in question. *Third,* the majority and the dissent moved in different directions because of disagreement over the position taken by Professor Moore in his treatise.

For a morbid discussion of the problem, see, Kalven and Rosenfield, the Contemporary Function of the Class Suit, 8 Chicago L.Rev. 684 (1941); Comments, The Spurious Class Suit: Procedural and Practical Problems Confronting Court and Counsel, 53 N.W.U.L.Rev. 627 (1958); Keeffe, Levy and Donovan, Lee Defeats Ben Hur, 33 Cornell Law Quarterly 327 (1948); Federal Class Actions: A Suggested Revision of Rule 23, 46 Cal.L.Rev. (1946); Multiparty Litigation in the Federal Courts, 71 Harv.L.Rev. 874 (1958); Moore and Cohn, Federal Class Actions, 32 Ill.L.Rev. 307 (1938); id., 32 Ill.L.Rev. 555 (1938); Lesar, Class Suits and the Federal Rules, 22 Minn.L.Rev. 34 (1938).

In *Union Carbide,* supra, the rule adopted by the majority was stated as follows:

> Other courts, in cases where there has been an identifiable class, have allowed unnamed plaintiffs to intervene and share in the judgment obtained by their representatives, *insofar as each is able to prove both membership in the class and damages.* [Emphasis added] [300 F.2d at 588]

Ultimately each class member will be required in some manner to establish his

individual damages. *Vasquez v. Superior Court of San Joaquin County,* supra.

"The rule clearly contemplates * * * relief in the form of *separate* similar judgments, emanating from the same source in law and grounded upon common questions of fact." [Emphasis added]. *Kainz v. Anheuser-Busch, Inc.,* 194 F.2d 737, 743 (7th Cir. 1952).

### (1) *New Hearing by Jury*

To hold open the judgment to permit persons to intervene after the verdict would involve a new hearing of the evidence by the jury. *Bascom Launder Corp. v. Telecoin Corp.,* 204 F.2d 331 (2d Cir. 1953), cert. denied, 345 U.S. 994, 73 S. Ct. 1133, 97 L.Ed. 1401 (1953).

In the instant case, the jury was discharged. It was not asked to return after 60 days to hear the evidence of over 400 class members who may have been permitted to intervene by the court.

The plaintiffs demanded a class action. The trial court permitted it to proceed. Neither the plaintiffs nor the trial court can complain of the extensive time necessary to listen to 400 additional parties testify before the verdict is rendered.

### (2) *Permissive intervention is permitted under Rule 24(b) and is practical.*

Rule 24(a) permits intervention of right "unless the applicant's interest is adequately represented by existing parties". It naturally follows that where the applicant's interest is adequately represented, the applicant may petition the court to intervene under Rule 24(b). To participate in the benefits of the judgment, the intervenor must become a party. There seems to be little reason to distinguish intervention in "spurious" class actions from permissive intervention under Rule 24(b).

When 400 or 4,000 members of a "spurious class" want to burden a defendant, a principle which avoids a multiplicity of suits, they have a duty to intervene and become parties before a verdict is rendered.

In this way, jury problems and "final" judgment questions are resolved.

An impractically large group of persons who want benefits for nothing should comply with the orderly Rules of Procedure through judgment and appeal.

If the judgment is amended, and the issues decided, the class members who did not become parties in this case may proceed with an independent suit for damages. See *Conover v. Packanack Lake Country Club,* 94 N.J.Super. 275, 228 A.2d 78 (1967).

### E. *Conclusion*

The majority have affirmed the judgment. It is not necessary to comment on other points raised because a decision on these points will not be a guideline for class actions.